MICHIGAN CENTRAL RAILROAD CO. *v.* CITY OF BAY CITY.

1. STREETS—OFFER TO DEDICATE—WITHDRAWAL—ACCEPTANCE.
   F. made and recorded what purported to be a plat of land owned by him, showing First street, among others, extending across the plat. He subsequently quitclaimed to a railroad company a right of way across the tract of which the land platted was a part, the same to correspond with the line of the road as afterwards established. The railroad company had already made provision for occupying First street, the council having authorized it to occupy "any street in the city," and F. had sold several lots fronting on the street, including the fee to the center thereof. *Held*, to indicate an intention of the parties that the right of way conveyed by the deed should be confined to the unplatted portion of the tract, and that First street should be occupied by virtue of the resolution of the council; and hence that the deed did not operate as a withdrawal of the offer to dedicate, even if such offer had not been accepted.

2. SAME.
   A resolution of the common council authorizing the construction of a railroad through land dedicated to the city as a street is effective as an acceptance by the city of the offer to dedicate.

Appeal from Bay; Shepard, J. Submitted November 21, 1901. Decided January 7, 1902.

Bill by the Michigan Central Railroad Company against the city of Bay City to quiet title. From a decree dismissing the bill, complainant appeals. Affirmed.

*E. A. Cooley (Henry Russel* and *Ashley Pond,* of counsel), for complainant.

*James E. Duffy (A. McDonell,* of counsel), for defendant.

HOOKER, C. J. One Fitzhugh, being owner of a large tract of land contiguous to or within the limits of Bay

City, made and caused to be recorded on March 22, 1869, a paper, purporting to be a plat of a portion of the tract, as an addition to the city. This plat is bounded on the easterly side by Park avenue, also mentioned in the record as the "Carney Road," and upon the westerly side by Trumbull street, both admitted to be public highways at the time complainant's railroad was constructed. Extending from east to west and across the addition, intersecting both Park avenue and Trumbull street, the map shows seven streets; viz., Nebobish avenue, upon the northern boundary of the plat; next, North street; and then, at regular intervals, streets numbered from first to fifth. The lots averaged about an acre in area, and fronted streets at both ends.

Upon December 18, 1871, a corporation known as the Detroit & Bay City Railroad Company obtained permission from the common council of Bay City to locate its line of railroad through any street in the city that it might elect to use for the purpose, by a resolution reading as follows:

"*Resolved*, that, in the opinion of this council, it is for the best interests of the city to grant the right of way to the Detroit & Bay City Railroad through any street in the city that they may select, and that we do hereby grant the same, subject to the ordinances now in force, or may be hereafter adopted."

It is claimed that there is testimony tending to prove that it was understood by all that First street would be occupied under this resolution, if it should be adopted.

As already stated, Fitzhugh owned much land contiguous to this addition, and on June 29, 1872, he made a deed of a right of way to the railroad company mentioned of land "50 feet in width, being 25 feet on the east and 25 feet on the west side of its line which should be thereafter established across sections 22, 23, 26, and 27, in township 14 N., range 5 east." This addition was upon a part of the land described. In the summer of 1873 the railroad company acknowledged and recorded its map, showing

the location of the route of its road, upon which its line was shown as located in First street, between the Carney road and Trumbull street; and during the same summer the iron was laid and the road was operated, and it has been continuously since, though it has changed hands, and now is operated by the complainant under a lease for a long term. Fences have been constructed and maintained by the railroad company upon each side of the track 25 feet from the center line, and across the strip upon the confines of Trumbull street and the Carney road. Cattle-guards were also maintained at the crossings of these streets.

Previous to the location of the railroad, Fitzhugh had contracted a number of lots fronting upon First street, and most of them were subsequently deeded by him. Under these contracts and conveyances the fee was granted to the center of the street. At the time the railroad was built there had been one house erected upon one of the lots, and others were built afterwards. The date of the erection of the fences built by the railroad company is in dispute; some witnesses for the company testifying that they were erected about the time the road was built, while many witnesses think it was done at a much later date, in which they seem to be corroborated by the fact that many of the lot owners erected and maintained fences upon the street line, which was some five feet outside of the railroad fence when constructed. These private fences had small gates opening upon the street, and some bars permitted ingress and egress in one or more instances. When the railroad fence was built, we understand that there is evidence that in some cases small gates were left to correspond with those theretofore existing in the private fences, and that in one instance a gate or pair of bars was left. Also a pair of bars was made in the fence running from the cattle-guard to the line fence, and was continued for a time, and at all times the alleged street was commonly used by the inhabitants of the locality to walk on; and there is evidence that teams occasionally traversed a portion

of it to reach adjoining premises, though, as the street was never improved, it was not in a condition to invite much use by vehicles.

It seems evident to us that the persons owning adjoining premises were desirous of having the street opened, and in June, 1890, they induced the common council to take action, and the following notice was served upon the railroad company:

> "BAY CITY, MICH., July 7, 1890.
> "MICHIGAN CENTRAL RAILROAD CO.,
>   "W. J. MARTIN, Esq., D. Superintendent.
> "*Dear Sir:* I am instructed by the common council to notify you to remove the fence on the east side of First street between Johnson and Park avenue, where the same crosses the street. The city desires to grade the same so as to enable the people residing on either side to get in and out. In case you are at a loss to understand just what is wanted, I would be pleased to confer with you at any time.           Yours, etc.,
>                         "JOHN C. WEADOCK,
>                           "City Attorney."

Mr. Weadock testified upon the trial that he knew that the notice reached the officers of the company, and that he was informed that the company would comply, and, soon after, it removed the cattle-guards and end fences. A few months later they were replaced, and this brought on a conflict between the railroad and city authorities, which culminated in the filing of this bill by the former to restrain the interference with its fences and to quiet its title. None of the adjoining proprietors were made parties. The learned circuit judge dismissed the bill, and the complainant has appealed.

The railroad company claims title under its deed from Fitzhugh to a strip of land 50 feet wide through the center of First street, and, to prevail, it must prove such title. It is possible that the description in the deed is broad enough to include a right of way over platted lands belonging to Fitzhugh upon either of the sections mentioned, in the absence of any circumstances indicating

a contrary intent; but it cannot be supposed that Fitzhugh intended to grant a right of way over lands which he had sold, or in highways which he had dedicated. Furthermore, the deed was a quitclaim deed, and the title conveyed was only what Fitzhugh had. Again, the fact that the railroad company had already made provision for getting through First street, which the resolution of the council was broad enough to cover, and the fact that several persons owned lots, including a right to the fee to the center of First street, so that such deed would not convey any valuable right to such portion, beget a strong presumption that neither party understood that Fitzhugh intended to convey title by this deed across the platted ground, and to allow the railroad company to cut a series of lots in two by building its road across them, and that he did not intend to convey lots already sold, but that all understood that the right of way conveyed by the deed was confined to the acreage property, and that the street should be occupied under the resolution already passed.

It is urged that the street was not dedicated by the plat because of defective acknowledgment, and that a common-law dedication was not effected, because the offer to dedicate (which is patent enough) was not accepted by the city, and must be treated as withdrawn. There is nothing to indicate a withdrawal by Fitzhugh, unless it be the deed of the right of way or the bare lapse of time, and we have already indicated that we think that deed was not intended to have such effect. There is evidence, uncontradicted, that the council understood, when its resolution was passed, that First street was to be used. If that is so, its action was significant upon the question of acceptance. Indeed, to provide for the construction of a railroad through land dedicated would be as effective a way for the public to make use of the land as a highway as to do a little grading upon it. This testimony is supplemented by the railroad map, from which it appears that the company understood that First street was accepted, and that its line was to occupy a portion of it. There is no broad equity which

demands the conclusion that Fitzhugh withdrew his offer. On the contrary, he owed a plain duty to every man to whom he had sold not to do it, because he was under contract obligations with them to maintain a street if the public did not. He lost the power to withdraw his dedication as to such of the lands as he sold to others. The city plainly declared its intent in 1890, and, without holding that the railroad company recognized the dedication, or lost any rights by taking down the fence when required, we are satisfied that it never took a title superior to the rights of contiguous owners in the fee, nor was it ever in a situation to deny the rights of the public in the street. Some claim is made of title by adverse possession, but we think it clearly disproved.

The decree of the circuit court is affirmed, with costs.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.