HELEN R. KIMBALL *et al.* Appellants, *vs.* THE CITY OF CHICAGO, Appellee.

*Opinion filed December 21, 1911—Rehearing denied Feb. 9, 1912.*

1. DEDICATION—*presumption that a deed was delivered on its date is rebuttable.* The presumption that a deed was delivered on its date is one of fact, which is rebuttable and is overcome by the fact that after the date of the deed, but before it was recorded, the grantor, in acknowledging a plat, certified before the proper officer that he was then the owner of the land.

2. SAME—*what fact goes merely to question whether plat was a statutory one.* The fact that a deed conveying all of the premises included in a plat was dated prior to the time the plat was acknowledged by the grantor, though the deed was not recorded until after the plat had been acknowledged, approved and recorded, goes merely to the question whether the plat was a statutory or common law plat.

3. SAME—*offered dedication of strip for alley cannot be withdrawn after acceptance.* If the purchaser of a platted tract of land immediately recognizes the plat by making conveyances with reference thereto he and his grantees are estopped to deny that the plat is at least a good common law plat, and if a strip of land shown thereon as a public alley is accepted by the city as a public alley, said purchaser cannot thereafter lawfully withdraw the dedication by conveying the strip to the owners of abutting lots.

4. SAME—*strip need not be marked on plat as an alley in order to show intention to dedicate it.* In order to show an intention to dedicate a strip of land for the use of the public as a street or alley it is not essential that the strip be so designated, in terms, on the plat, provided such intention is manifested by a consideration of the entire plat, including the figures thereon, the surrounding streets and alleys and their connection with the strip in question.

5. SAME—*when it is presumed that all streets and alleys of a subdivision have been accepted.* Acceptance of the streets and al-

leys shown on a common law plat may be express, as evidenced by ordinance or resolution, or may be implied from the acts of the city or the public by making improvements or by travel; and where it clearly appears that the principal streets and alleys of a subdivision have been accepted by the city by paving, putting in sidewalks, sewers and the like, it must be presumed that all the streets and alleys were accepted, in the absence of anything to show the acceptance was limited.

6. SAME—*ordinance recognizing legal existence of alley is evidence of acceptance.* An ordinance which recognizes the legal existence of an alley shown on a common law plat by authorizing an abutting owner to lay a track across the strip to connect with the tracks of a railroad company is evidence of an acceptance of the strip as a public alley.

APPEAL from the Superior Court of Cook county; the Hon. W. FENIMORE COOPER, Judge, presiding.

WILLIAM S. CORBIN, for appellants.

WILLIAM H. SEXTON, Corporation Counsel, and HENRY A. BERGER, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by appellants to restrain the city of Chicago, the appellee, from taking possession of or from in any way interfering with the possession, use, enjoyment and control by the appellants of a strip of land sixteen feet wide lying between the south line of the right of way of the Chicago and Great Western Railroad Company and the north line of blocks 1 and 6 in D. S. Place's addition to the city of Chicago, being a subdivision of the east half of the south-west quarter of section 15, township 39, north, range 13, east of the third principal meridian, lying south of the right of way of the Chicago and Great Western railroad, except the west thirty-three feet thereof. An answer and replication were filed and a decree was entered dismissing the bill for want of equity, and an appeal has been prosecuted to this court.

The following sketch taken from the plat shows the *locus in quo:*

It appears from the record that on March 28, 1890, George F. Stodder executed a plat of said premises, which were described as D. S. Place's third addition to Chicago; that on the same day Sylvester N. Howard, a surveyor, certified that he had surveyed said premises and had subdivided the same into lots, blocks, streets and alleys, all of which were correctly represented upon the plat, to which his certificate was attached; that on the same day the Greeley-Carlson Company, by Gustaf H. Carlson, certified that it had platted said subdivision in accordance with said survey; that on the 29th day of March, Hiram Holbrook Rose, trustee, attached his approval to said plat; that on the 5th day of April George F. Stodder personally appeared before Frank R. Lindop, a notary public, and certified that

he was the owner on that day of said land and acknowledged the plat; that on April 9 the plat was examined by the city examiner of subdivisions and approved, and on the 11th day of April, 1890, the plat was filed for record and recorded in the recorder's office of Cook county.

The question to be determined upon this record is, was the strip of land situated between the south line of the right of way of the Chicago and Great Western Railroad Company and the north line of blocks 1 and 6 of said subdivision dedicated as a public alley on said plat of said subdivision, and if it was so dedicated was such offer of dedication accepted by the city? In other words, is said strip one of the public alleys of the city of Chicago and under the control of the city, or is it the private property of the owners of the lots in blocks 1 and 6 of said subdivision?

It further appears from the record that on April 3, 1890, George F. Stodder and wife executed a deed to Samuel Kerr of all their interest in that part of the east half of the south-west quarter of section 15, aforesaid, lying south of the right of way of the Chicago and Great Western Railroad Company, except the west thirty-three feet thereof; that said deed was acknowledged by the grantors on April 4 and was recorded on June 21, 1890; that on August 4, 1890, Samuel Kerr conveyed all the lots in blocks 1 and 6 in said subdivision to John C. Schumacher, and that the present owners of the lots in blocks 1 and 6 hold their title through *mesne* conveyances from said John C. Schumacher; that on May 1, 1910, Samuel Kerr quit-claimed said strip between the right of way of the Chicago and Great Western Railroad Company and the north line of blocks 1 and 6 to William C. Coburn, the attorney for the appellants and the adjoining lot owners, and he on the same day quit-claimed the strip to his clients, who owned lots adjoining said strip, and that the strip was immediately enclosed by fences by the respective lot owners with their lots, and this bill was then filed.

The first contention of the appellants is, that George F. Stodder was not the owner of the east half of the southwest quarter of section 15, aforesaid, at the time D. S. Place's Third addition to Chicago was platted, and did not, therefore, have the right to subdivide said land, as on the third day of April he had conveyed the same to Samuel Kerr and the plat was not completed and recorded until April 11. The deed to Kerr bore date of April 3, was acknowledged April 4 and recorded June 21, and the presumption is that the deed was delivered on its date. That presumption is one of fact, however, and is rebuttable, and we think the presumption of delivery on the date of the deed is rebutted by reason of the fact that after the date of the deed, but before it was recorded, George F. Stodder certified before an official authorized to take his acknowledgment, that on the 5th day of April, and subsequent to the date of the deed to Kerr, he was the owner of the said premises. If, however, the presumption of delivery was not rebutted by that fact and Stodder was not the owner of said premises at the time he caused the land to be subdivided, that fact would only go to the question whether the plat filed by him was a statutory plat and conveyed the fee of the streets and alleys to the city of Chicago, or a common law plat; and from the view we take of this case it is immaterial whether said plat is to be treated as a statutory or common law plat, as Kerr immediately recognized the said plat by making conveyances with reference thereto, and he and his grantees are estopped to deny that said plat is at least a good common law plat of said subdivision, and if said strip was offered by said plat to be dedicated as a public alley, and it was accepted by the city as a public alley before the offer of dedication was withdrawn, this bill cannot be maintained.

It is next contended that said plat did not constitute an offer by Stodder to dedicate said strip to the city as a public alley, as said strip was not marked or designated upon

the plat as an alley. It is, we think, clear from the plat that said strip, although not marked as such on the plat by the word "alley," was intended by the plattor to be dedicated to the city as an alley. The width of the alley at each street intersection is marked with the figures "16," which figures, we think, were placed upon said plat to designate the width of said strip to be sixteen feet, and the street lines where they intersect said strip north of blocks 1 and 6 do not cross said strip, as they would had it not been the intention of the plattor to dedicate said strip to the public as an alley,—that is, the strip at each street intersection is left open and connects directly with the street, so that travel can pass from either of the three streets of said subdivision along blocks 1 and 6 upon said strip without crossing any line or lines upon said plat, which would indicate an intention on the part of the plattor, we think, to connect said strip at each street intersection in said subdivision, and to indicate that said strip had been left open as an alley, as plainly as though the strip had been marked with the word "alley" upon the plat. We therefore conclude that the strip in question was designated upon the face of the plat as an alley. We take it there is no difference between the rule applicable to the dedication of an alley and that applicable to the dedication of a street, and it was so held in *VanWitsen* v. *Gutman,* 79 Md. 405, where, at page 405 of the opinion, the court said: "It is thought that no one will suppose that there can be any difference between the modes of dedicating a public alley and a public street."

In numerous cases in this court it has been held that in order to show an intention to dedicate a strip of land for the use of the public as a street it is not essential that the strip be designated on the plat as a street, if, upon consideration of the entire plat, there is manifested an intention to dedicate the strip as a street. In *Thompson* v. *Maloney,* 199 Ill. 276, it was said, on page 284: "A survey and plat, alone, are sufficient to establish a dedication, if it is evi-

dent from the face of the plat it was the intention of the proprietor to set apart certain grounds for public use.— *Smith* v. *Town of Flora,* 64 Ill. 93; *Godfrey* v. *City of Alton,* 12 id. 29; *Maywood Co.* v. *Village of Maywood,* 118 id. 61." In Elliott on Roads and Streets (2d ed. sec. 18,) it is said: "Where a plat of a town or city is made and recorded and lots are designated thereon, with spaces left which fairly indicate that they are set apart to the public, the spaces thus indicated are presumptively streets." In *Ingraham* v. *Brown,* 231 Ill. 256, it was said, on page 259: "The strip runs across the entire subdivision, and while not named upon the plat as a street, it is marked upon its margin with the figures '138,' and the surveyor, in his certificate attached to said plat, certifies that 'all measurements are taken in feet and parts of a foot, and the several sizes of the lots and blocks and widths of streets and alleys are marked on their margins, as shown upon the plat.' We are unable to understand why the figures '138' were placed upon the margin of said strip, as platted, if it was not the intention of the surveyor to indicate upon the plat, by such figures, the width of said strip and that it was set apart as a public street. In order to show an intention to dedicate said strip to the use of the public as a street it was not necessary that the strip be named as a street, as such intention may be established in any conceivable way by which it may be made manifest that it was intended to set said strip aside as a public street. 'A survey and plat, alone, are sufficient to establish a dedication, if it is evident from the face of the plat it was the intention of the proprietor to set apart certain grounds for public use.' *(Thompson* v. *Maloney, supra.)* 'Where a plat of a town or city is made and recorded, and lots are designated thereon, with spaces left which fairly indicate that they are set apart to the public, the spaces thus indicated are presumptively streets.'—Elliott on Roads and Streets, (2d ed.) sec. 18."

We are of the opinion that by the plat an offer to dedicate said strip to the public as an alley was made, and the only remaining question to be determined is, does the record show an acceptance of the offer to dedicate the strip before the offer of dedication was withdrawn? If the plat was a statutory plat the offer could only be withdrawn by a vacation of the plat under the statute, but if it was a common law plat the offer of dedication might be otherwise withdrawn before acceptance. The evidence shows that the streets of the subdivision have been improved by the city by paving, constructing sidewalks, putting in sewers, placing lamp-posts, etc., in the streets. It is urged, however, that this particular strip had not been so improved. This is true to a large extent, as the land was open and there was but little occasion to travel upon this strip; but it was not necessary that all the streets and alleys of the subdivision should be improved at once and utilized by the city or be lost to the city. An acceptance may be express, as by some positive act of the municipality evidenced by an ordinance or resolution, or an acceptance may be implied from the acts of the city or the public, as by making improvements or by travel; and where it clearly appears that the principal streets and alleys of a subdivision have been accepted by the municipality, the presumption then obtains that all the streets and alleys of the subdivision have been accepted, unless there is something which shows the acceptance to have been limited, and there is no proof in this record that the city declined to accept any portion of the plat, and that being true, the acceptance of a part was an acceptance of the whole plat. In *Village of Lee* v. *Harris,* 206 Ill. 428, it was said, on page 435: "It is insisted that an acceptance of some of the streets and alleys of a plat does not constitute an acceptance of the whole, and that proof of the acceptance of a part is not sufficient to vest the village with right to the use, possession and control of all the streets and alleys shown on a plat. We do not so un-

derstand the law, but, on the contrary, hold the true rule and doctrine to be, that an acceptance by a city or village of some of the streets and alleys appearing on a plat is an acceptance of the entire system of streets and alleys so appearing, unless the intention to limit the acceptance is shown." And it is further said in that case: "The immediate opening and use, by the public, of all the streets in ground laid out and platted into lots, for their entire length, or an immediate formal acceptance by some competent public authority, is not necessary to give effect to the dedication of land to the public use, of a street, by the making of a town plat and the selling of lots with reference to the plat. The public authorities must be allowed a reasonable time for opening and improving public streets, as their resources and the public necessity may allow and require." In *Village of Augusta* v. *Tyner,* 197 Ill. 242, it was said, on page 246: "It is true that a street may be accepted in part and the remainder rejected, if it is proved that such was the intention of the public authorities. An acceptance of some of the streets named in a plat will not constitute an acceptance of the whole, if it is shown that there was an intention to limit the acceptance." The record further shows that on two occasions,—first in 1903 and again in 1910,—the city recognized the legal existence of this alley by ordinances which were passed by the city council, one of which granted to one of the appellants the right to lay railroad tracks across the said strip to connect its property with the right of way of the railroad company. In *People* v. *Johnson,* 237 Ill. 237, it was said, on page 241: "An express acceptance may be shown by some order, resolution or action of the public authorities made and entered of record." And in *Michigan Central Railroad Co.* v. *Bay City,* 129 Mich. 264, (88 N. W. Rep. 638): "A resolution of the common council authorizing the construction of a railroad through land dedicated to the city as a street is effective as the acceptance by the city of an offer to dedi-

cate." To the same effect is the case of *Schaefer* v. *Selvage*, (Ky.) 41 S. W. Rep. 569.

There is ample evidence in this record to show an acceptance of the strip in question by the city as a public alley before the same was conveyed by Kerr to the appellants, and the attempt on their part to appropriate said strip by fencing the same in with their lots was without avail. The superior court therefore properly held the appellants were not entitled to an injunction restraining the city from keeping said strip open as a public alley.

Finding no reversible error in this record the decree of the superior court will be affirmed.        *Decree affirmed.*