THE CONSUMERS COMPANY, Appellant, *vs.* THE CITY OF CHICAGO, Appellee.

*Opinion filed April 22, 1915—Rehearing denied June 10, 1915.*

1. PLATS—*how part of plat may be vacated.* Under section 7 of the Plats act any part of a plat may be vacated by the owner of such part before any lots therein are sold, or, after lots are sold, by all the lot owners in such part joining in the deed of vacation, provided the rights of other proprietors are not abridged or destroyed or public highways closed which are laid out according to law.

2. SAME—*what does not affect rights and privileges of other proprietors.* The rights and privileges of other proprietors which, under the statute, cannot be abridged or destroyed by vacating a part of a plat are legal rights and privileges, and such proprietors

are not affected by closing streets not adjacent to their property and not affording access thereto and egress therefrom.

3. SAME—*when rights of other proprietors are abridged.* If at the time of an attempted vacation of a portion of a plat, including portions of certain streets crossed by a railroad right of way, lots have been sold which depend upon such streets for access and egress to and from other portions of the city, the rights and privileges of the owners of such lots are abridged by the attempted closing of the streets at the railroad right of way; and the situation is not altered by the fact that the railroad right of way is subsequently elevated so as to make a twenty-foot embankment, which will have to be pierced by subways for such streets.

4. SAME—*when doctrine of equitable estoppel does not apply.* The facts that the portions of the streets attempted to be vacated are crossed by railroad tracks and street car tracks, and that a coal shed of comparatively little value projects a few feet into one of the streets at the place in controversy, do not make the doctrine of equitable estoppel applicable, so as to prevent the city from insisting upon opening the streets at the place of the attempted vacation.

5. SAME—*when acceptance of streets is presumed.* In the absence of a contrary intention being shown, acceptance by a municipality of the principal portion or of nearly all the streets of a subdivision raises a presumption of acceptance by it of all the streets of the subdivision.

6. SAME—*how acceptance of streets may be shown.* Evidence of the acceptance of streets by a city is found in the affirmative acts of taking possession thereof for the purpose of placing water mains or sewers therein; also an acceptance may be shown by general user of the streets by the public for a considerable period.

7. SAME—*the mere acceptance of streets does not bar vacation under the statute.* While the mere acceptance of a street by a municipality does not preclude the vacation of a portion thereof under the statute, yet the right of vacation cannot be exercised if the portion of the street sought to be vacated provides access to and egress from lots sold prior to the attempted vacation, whose owners have not joined in the vacation.

8. SAME—*non-user of street will not defeat claim of ownership by city.* Non-user by a city of a portion of a street for a number of years will not defeat its claim of ownership, where there are no facts in the case giving rise to the doctrine of equitable estoppel.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

A suit in equity was brought to restrain the city of Chicago from interfering with the possession by appellant of two triangular pieces of ground situated in the northwestern part of said city. The suit was brought by the City Fuel Company, which later was consolidated with the Consumers Company, and an order was entered changing the name of the complainant in the bill to Consumers Company. After the restraining order was issued, and while it was in force, an amended bill was filed, and the restraining order was made to apply under the amended bill. The amended bill charged that on June 30, 1891, Michael Bauerle was the owner of a certain subdivision of the west half of the northeast quarter of section 25, township 40, north, range 13, east of the third principal meridian, in Cook county; that on said date said Bauerle caused said premises to be surveyed and subdivided, and the subdivision is known as Michael Bauerle's addition to Maplewood. A plat of the subdivision was recorded, a copy of the same is attached to the bill, and the portion necessary to an understanding of this case is here shown:

By the amended bill it is further alleged that on April 17, 1894, said Bauerle and Mary Pregler were the owners of block 7 as shown on said plat, and by their deed of that date they declared that part of said plat shown as block 7, together with the twenty lots and alleys into which the block was subdivided, to be vacated, which deed was recorded in the office of the recorder of Cook county and a copy of the same was attached to the bill. On April 14, 1894, said Bauerle and Mary Pregler, being then the owners of said block 7, caused said block to be re-surveyed and re-subdivided, and a copy of the plat of the re-subdivision was attached to the bill and is as here shown:

It is then alleged that on and prior to the first day of November, 1899, the Anthracite-Bituminous Coal Company was the owner and occupant of lot 8 and said Bauerle of lot 7 in said re-subdivision of said block 7, and the Chicago and Northwestern Railway Company was the owner of the right of way across the west half of said northeast quarter of said section 25, and on said date said last described tracts were the only property abutting on the

premises hereinafter described; that the said Anthracite-Bituminous Coal Company was the owner of a reversionary interest in the parts of the street hereinafter specified, embraced within the plat of Bauerle's addition, and was at the same time the sole party interested therein; that on said first day of November the said Anthracite-Bituminous Coal Company, said Bauerle and said railway company desired to vacate a portion of the plat known as Bauerle's addition to Maplewood, such portion being described in the bill by metes and bounds and including that part of the land shown on the plat as a part of North Fairfield avenue (or Linden avenue); that said part of the land shown on the plat as North Fairfield avenue (or Linden avenue) has never been used as a street by any person or persons, nor has any public highway been laid out according to law along that portion of North Fairfield avenue, nor have any steps been taken to establish the same as a public highway; that on said date said parties last above described, "in pursuance of the power of said owners vested by chapter 109 of the Revised Statutes of Illinois," did by their deed of that date vacate so much of said plat as is last above described, which deed was recorded and a copy thereof attached to said bill; that on and prior to July 12, 1900, the Anthracite-Bituminous Coal Company was the owner and occupant of lots 5, 6, 7 and 8 in the re-subdivision of said block 7, and also of lot 34 in Wheeler's subdivision of part of lot 4 in another subdivision; that the said Chicago and Northwestern Railway Company was on the said date the owner of the right of way across the west half of said section 25, and that said several tracts of land were on said date the only property abutting on the premises hereinafter described, and that on said date said Anthracite-Bituminous Coal Company was the owner of all of the reversionary interest in the parts of those alleys hereinafter specified embraced in Bauerle's addition, and that the corporations last

mentioned were the only persons, firms or corporations interested in the property abutting upon said parts of streets or alleys mentioned and in the reversionary rights embraced therein; that said coal company and said railway company on said last mentioned date desired to vacate the portion of the plat specified as the re-subdivision of said block 7, describing the same in detail; that the said parcels of land shown upon said plat as part of Franklin street (or George street) have never been used as a street or alley by any persons, firms or corporations whatsoever, nor has any public highway been laid out according to law over said portion of said Franklin street, (or George street,) nor have any steps been taken to accept the same, or any part thereof, as a public highway; that pursuant to the power in said owners vested by said chapter 109 of the statutes of the State of Illinois, they did, on July 12, 1900, by their deed of vacation, vacate the premises, which deed was duly recorded and a copy thereof is attached to the bill; that by virtue of said deeds of vacation above set forth that part of North Fairfield avenue (formerly known as Linden avenue) and that part of Franklin street, (formerly known as George street,) as shown on the plat, reverted to and became vested in the said coal company, and that said coal company has ever since the execution of said deeds been the owner of the reversionary interest in said parts of said streets until April 1, 1908, when it conveyed said premises to the Peabody Coal Company, and that said coal company, its grantees and lessees, have been in the open, notorious, adverse and undisturbed possession thereof ever since and prior to the execution of the aforesaid deeds; that on August 31, 1900, said Peabody Coal Company caused to be surveyed the lots surrounding the parts of streets and the alleys herein involved, and the said streets and alleys, setting the same out in detail, and caused the same to be consolidated into one lot, and caused the same to be platted

and attached a copy of the said plat to the bill, and the
portion involved in this case is here shown:

It is further alleged in the bill that said last named con-
solidation included those portions of North Fairfield ave-
nue and George street set forth and described in said deeds
of vacation above set forth and as to all of which the city
of Chicago had notice; that said coal company, as the
owner of said parts of said streets, together with certain
other property contiguous thereto, on January 15, 1908,
leased unto the Supply and Sales Company, a corporation,
parts of what were formerly known as North Fairfield
avenue and George street, being the parts of said streets
set forth, described and vacated by said deeds of vacation,
together with a large amount of contiguous property; that
said Supply and Sales Company, by proper legal proceed-
ings, changed its name to City Fuel Company, and that un-

der said last mentioned name complainant took possession
of said property so vacated by deeds of vacation, together
with a large amount of contiguous and adjacent property,
under said lease with the said Anthracite-Bituminous Coal
Company, and is now, and has been ever since the execu-
tion of said lease, using said premises so vacated as afore-
said, together with said contiguous property, as a coal yard,
and that complainant has at great expense erected thereon
certain coal sheds, railroad switches and sidings, and placed
other costly improvements thereon for the purpose of its
business as a dealer in coal and wood, and as such lessee
has been in the exclusive, open, notorious, adverse and un-
disturbed possession thereof from the time of the making
of the said lease until the present time; that said so-called
parts of streets were prior to, and have been continuously
since, the recording of the plat of Bauerle's addition to
Maplewood occupied as a coal and wood yard; that the
same were never open to traffic, nor has the city of Chi-
cago at any time repaired said premises or caused to be
exercised any acts of ownership or control or possessory
rights thereover, nor has the city of Chicago, through its
properly constituted authorities, in any way expressly or
impliedly accepted the same or made any claim thereto;
that said city of Chicago has long since lost all rights which
it claimed to have had or now claims to have had in and
to said premises, by reason of the non-user thereof and
by suffering and permitting the occupants thereof to make
valuable and expensive improvements thereon, by means
whereof said city of Chicago is now estopped from main-
taining or asserting any right, claim or title in and to said
premises or to any part thereof; that on or about Feb-
ruary 8, 1911, the city of Chicago, acting through the
superintendent of its street department and by order of
the commissioner of public works of the city of Chicago,
caused certain notices to be served upon complainant, which
required and directed the complainant to remove or cause

to be removed within the space of fifteen days from the date thereof, the buildings, fences and other improvements alleged to have been obstructions of the alleged streets opposite or in front of the premises known and described as George street between Fairfield avenue and the Chicago and Northwestern railway, and from George street to the Chicago and Northwestern railway, copies of which said notices are attached to the bill; that the premises referred to and described in said notices are intended to be the same premises set forth, described and vacated by the said deeds of vacation aforesaid; that the city of Chicago has threatened and notified complainant that unless it removes its buildings and other improvements on said premises so vacated by said deeds of vacation said city of Chicago will, at the expiration of the time specified in its said notices, through its police department or other means, proceed to tear down, demolish and remove all the sheds and other improvements located thereon and will summarily eject the complainant therefrom; that the action so taken by the said city of Chicago in serving said notices is wholly without warrant or authority in law, and that said city of Chicago has no right or interest in said premises so vacated as aforesaid nor in any part thereof, but that, on the contrary, title to said premises is now vested in the Peabody Coal Company, which is the owner in fee thereof; that if said city of Chicago proceeds to carry out its threats in summarily ejecting said complainant from said premises and in removing its buildings, sheds and other property therefrom it will cause irreparable damage to the business of complainant, and will also greatly depreciate the value of the contiguous property used by complainant, as aforesaid, for the purpose of a coal and wood business; that unless restrained by the injunction of the court said city of Chicago will carry out its said threats and cause said buildings, sheds and other improvements on the property so vacated to be removed, destroyed and demolished, greatly

to the damage and injury of complainant. The bill prays that said city of Chicago, its attorneys, agents and servants, may be enjoined and restrained from removing or attempting to remove, demolish or tear down said buildings, sheds and other improvements or to in any other way interfere with complainant's possession of said premises so vacated by said deeds of vacation.

The appellee filed an answer to the bill, admitting many of the allegations therein contained, they referring largely to the statements relative to the making of the plats and deeds. It neither admits nor denies many of the allegations, but denies specifically that the said Anthracite-Bituminous Coal Company was the owner of a reversionary interest in that part of North Fairfield avenue embraced within the plat of Bauerle's addition; denies that the said Bauerle and wife and the Chicago and Northwestern Railway Company had vacated said North Fairfield avenue; denies that said avenue had never been used as a street by any person or persons; denies that no public highway had ever been laid out according to law and that no steps had ever been taken to establish the same as a public highway, and avers that long prior to the date of the execution of the instrument pretending to vacate the same, sidewalks had been built on said avenue for the use of the public and were used by the public having occasion to travel along said highway, and incorporates in the answer a copy of an ordinance passed by the appellee directing the laying of a water main in the avenue from said Chicago and Northwestern Railway Company's right of way to a point four hundred feet north, and asserts that in compliance with the said ordinance said water main was laid by the commissioner of public works at the expense of the city; avers that long prior to the deed of vacation having been made the city had accepted the dedication of that portion of North Fairfield avenue and that the fee simple title vested in appellee; denies that said coal company was the owner

of reversionary rights or interests in the parts of streets
and alleys mentioned in the deeds of vacation; denies that
the part of Franklin street (or George street) has never
been used as a street for the use of the public and that no
public highway has ever been laid out thereon according to
law, and avers that prior to the deed attempting to vacate
said streets, sidewalks were built on said George street and
the street had been accepted and the fee simple title vested
in the city; denies that by the alleged deeds of vacation
that part of North Fairfield avenue (formerly known as
Linden avenue) and that part of Franklin street (formerly
known as George street) reverted to and became vested in
said coal company, and denies that said company has since
been the owner of or did by deed convey to the Peabody
Coal Company any reversionary interest whatever in and
to said parts of streets, or that the said coal company has
been in the open, notorious and adverse possession of said
parts of streets; admits that the Supply and Sales Com-
pany changed its name to City Fuel Company, and that
under said last mentioned name the complainant has taken
possession of said parts of North Fairfield avenue and
Franklin street, together with a large amount of contigu-
ous property, and is now, and has been for some years past,
using and occupying said parts of streets, together with
contiguous property, as a coal yard, and that said complain-
ant has erected thereon certain coal sheds, railroad switches
and sidings and has placed improvements thereon; that it
is now, and has been, actively conducting a large business
on said premises of which the said streets form a part, but
avers that said improvements placed upon said portions
of said Fairfield avenue are of small value, and that said
buildings and improvements were placed upon said portions
of said streets wrongfully and in violation of law; denies
that the said parts of North Fairfield avenue and Frank-
lin street were prior to and have been continuously since
the recording of the plat of said Bauerle's addition occu-

pied as a coal and wood yard, or that the same were never open to traffic, or that the city of Chicago has never at any time repaired or in any manner exercised any acts of ownership or possessory rights thereover, or that the city of Chicago has never accepted the same or made any claim thereto; denies that the city of Chicago has long since lost all rights in and to said streets by reason of the non-user thereof or by suffering and permitting the occupants thereof to make valuable and expensive improvements thereon, and denies that the city is now estopped from asserting any right or claim thereto; admits that on February 8, 1911, defendant caused certain notices to be served upon complainant, as alleged in said amended bill, copies of which are attached thereto marked exhibits "G" and "H," and further admits that it has notified complainant that unless said buildings and other obstructions are removed from the parts of said North Fairfield avenue and Franklin street hereinbefore mentioned, within the time specified in said notice, the defendant would proceed to remove all of said buildings and obstructions from said parts of said streets, as alleged in said bill; denies that in serving said notices it is wholly without warrant or authority of law or that defendant has no right or interest in said parts of said streets, and denies that the title to said parts of said streets is now vested in the Peabody Coal Company; denies that the summary removal of complainant from said parts of said streets will cause irreparable damage and injury to the complainant or will depreciate the value of the contiguous property for the purpose of the coal and wood business; denies that complainant is entitled to any relief, and prays that the temporary restraining order may be dissolved.

By agreement of the parties the cause was referred to a master in chancery to take proofs and report his conclusions both as to the law and the facts. Much testimony was taken, and in due course the master made his report, in and by which he found the facts relative to the owner-

ship, by deed, of the respective parties were, in substance, as set forth in the bill, and the attempted deeds of vacation, and the plats thereof, were made as alleged therein; also (eighth finding) on August 31, 1900, the said coal company caused a certain survey to be made, including parts of North Fairfield avenue and George street, and consolidated said property into one lot, as lot "A," and said plat is known as Egloff's consolidation. Prior to the execution of said plat a number of lots in Bauerle's addition had been sold and were on that date owned by persons not parties to this litigation, but none of such lots abutted on either of the two streets attempted to be vacated. In the year 1888 the Chicago and Northwestern Railway Company placed wire fences, with wooden posts, along both sides of its right of way at the stub ends of said two streets. Holes were broken in these fences, and children, and sometimes adults, crossed the railroad tracks through the holes in such fences. Teams were driven occasionally along George street near the railroad track and then northwest and west to California avenue, which continued until the year 1900. The holes in the fences were repaired from time to time, but the preponderance of the evidence shows the fence across North Fairfield avenue was broken down to such an extent that teams occasionally, in 1894 and prior thereto, were driven across the railroad tracks at Fairfield avenue, but after 1894 no teams were so driven across said tracks. No teams were driven across the tracks at George street at any time, but teams occasionally, until 1900, were driven along the stub end of George street to the fence and thence to California avenue. Some of the property owners in said subdivision had wooden sidewalks laid in 1892 along both sides of George street and Fairfield avenue, including those parts of streets here in question. Neither of the stub ends of said streets was ever paved or worked by the city or by anyone as a street and no sidewalks were ever laid in them by the city. The railroad tracks at this point were elevated

in 1898, and there is no subway either at Fairfield avenue or George street. Special assessment proceedings were carried through by the city council in 1896 for the construction of a system of sewers in certain streets, including George street to Fairfield avenue, and in Fairfield avenue from George street to its northern terminus. In 1893 the city laid a six-inch water main along Fairfield avenue under the railroad tracks, extending some distance north and south of the tracks, and in 1895 along George street to the center of Fairfield avenue. In 1900 fences were placed by complainant's predecessors across these stub ends of streets, and since that time they and the contiguous property have been used exclusively as part of the complainant's and its predecessors' coal yard, except for said water main. When the railroad tracks were elevated an additional switch track was laid across these stub ends of streets, and about the year 1900 a street car track was run in upon them from California avenue, which is being used to haul coal out to the street car line. Part of the coal sheds erected in 1900, or shortly thereafter, occupy a portion of the stub end of Fairfield avenue. In 1891, and for some years thereafter, the land north and northwest of these premises was practically open prairie. Both Fairfield avenue and George street extend for some distance on either side of the railroad,—Fairfield avenue for one block north of the tracks and for several blocks south thereof, and George street for several blocks in either direction. The stub ends of both of said streets are public streets. They were accepted as such by the public by user and the city of Chicago by constructing the water mains and said sewers. The master further finds that the complainant and its predecessors have not been in the open, adverse and exclusive possession of said stub ends of the streets for twenty years last past, and that the complainant was not in the possession of the stub end of Fairfield avenue at the time of the filing of the bill herein and is not now. Said water main prevented

such possession from being exclusive as to the stub end of George street. Complainant and its predecessors have been in possession only since 1900. The deeds of vacation and plats were inoperative to vacate said stub ends of said streets or to withdraw the offer to dedicate them as public streets, for the reason they were accepted as public streets prior to the execution of the deeds of vacation. The switch tracks, fences and coal sheds upon said stub ends of said streets are not sufficiently valuable or substantial improvements to give rise to an equitable estoppel against the city or the public from claiming the streets for public use. Notices were served by the city for the removal of improvements on said premises, as alleged in the bill. By request the master viewed the premises, and finds there is a subway under the Northwestern tracks at Washtenaw avenue and one at California avenue, each one block distant from said stub end of Fairfield avenue. There is no subway at either Fairfield avenue or George street. The equities are with the defendant city. The temporary injunction issued should be dissolved and the amended bill of complaint dismissed for want of equity.

Objections to the findings of the master were duly argued and overruled, and upon the filing of the report, by agreement of parties, an order was entered providing that such objections should stand as exceptions to the master's report. The exceptions to the master's report were overruled and the report was approved and confirmed and the amended bill dismissed for want of equity. Thereupon this appeal was prayed, allowed and perfected. The record is brought here for review, and by proper assignments of error this court is asked to determine whether the city of Chicago now has such an interest in the stub ends of the streets in controversy as will justify it in proceeding according to the notice served prior to the institution of this suit.

UNDERWOOD & SMYSER, (CHARLES R. YOUNG, of counsel,) for appellant.

WILLIAM H. SEXTON, Corporation Counsel, (A. L. GETTYS, of counsel,) for appellee.

Mr. JUSTICE WATSON delivered the opinion of the court:

There is ample evidence in the record supporting the findings of the chancellor as to the controlling facts in issue, and upon consideration of the same as abstracted we cannot say the findings of the court are not in accordance with the evidence. Therefore the only thing to be determined in this court is whether the vacations referred to in the foregoing statement were lawfully made under the provisions of section 7 of chapter 109, (Hurd's Stat. 1913, p. 1856,) so as to include the stub ends of North Fairfield avenue and West George street, and if so, whether the acceptance of said ends of said streets by the municipality, together with a proper consideration of the rights of other owners of lots in the addition, renders such vacations void as to the streets mentioned.

Similar questions have been considered by this court in numerous cases, arising both under the present statute and similar statutes enacted under the constitution of 1848, but our attention is especially directed by the briefs to the opinions of this court in *Chicago Anderson Pressed Brick Co. v. City of Chicago,* 138 Ill. 628, and *Heppes Co. v. City of Chicago,* 260 id. 506, and upon the authority of those cases, mainly, we are asked to reverse the decree in the case at bar.

In the *Pressed Brick Co. case* the object of the litigation was to determine whether a strip of land attempted to be vacated remained part of a city street, the vacation having been made by the pressed brick company as sole owner of the lots abutting thereon, on each side thereof,

by proper deed duly recorded.   It is provided by section 7 of chapter 109 of the Revised Statutes of 1874, entitled "Plats," that "any part of a plat may be vacated in the manner provided in the preceding section, and subject to the conditions therein prescribed: *Provided,* such vacation shall not abridge or destroy any of the rights or privileges of other proprietors in such plat: *And, provided, further,* that nothing contained in this section shall authorize the closing or obstructing of any public highway laid out according to law."   The conditions prescribed in the preceding section are, simply, first, that the vacation shall be before any lots are sold; or second, if any lots are sold, all the owners of lots in such plat shall join in the deed of vacation.   And as a qualification to the language of section 7, the meaning is, clearly, any part of a plat may be vacated by the owner of such part before any lots therein are sold, or after lots are sold, by all the lot owners in such part joining in the deed of vacation.   The court held in the *Pressed Brick Co. case,* as had been previously held in *Littler* v. *City of Lincoln,* 106 Ill. 353, that the rights or privileges of other proprietors protected by the statute are legal rights and privileges, and such proprietors are not affected by closing streets not adjacent to their property and not affording access thereto and egress therefrom.   The record showing there were no other proprietors affected by the vacation, the court held the same effective as to the portion of the street in controversy.   In the *Pressed Brick Co. case* this court also construed the clause, "nothing contained in this section shall authorize the closing or obstructing of any public highway laid out according to law," to refer only to such highways as had been or might be established by local highway authorities acting affirmatively and in pursuance of their statutory powers with reference to surveying, marking courses and boundaries and ordering the opening of such highways.   The

268 – 9

court stated there was in the case before it no evidence the streets in question had been designated or accepted or improved by the public authorities. All that was said in the *Pressed Brick Co. case* was affirmed in the *Heppes Co. case, supra,* and there is no doubt the provisions of section 7 of chapter 109, as there construed, permit the closing of the stub ends of the streets here in question, if the finding of facts by the chancellor brings appellant within the purview of those decisions.

If we are correct in our understanding that North Fairfield avenue extends south several hundred feet beyond the embankment of the railroad and that West George street extends several blocks west of said embankment, in Bauerle's addition, and that prior to the attempted vacations here in question of the portions of those streets abutting upon the northeasterly side of said embankment lots had been sold in the addition north and east of the railroad and depending upon those streets for access and egress to and from other portions of the city, then it would seem to follow, as an inevitable conclusion, that the rights and privileges of the owners of those lots would be abridged and destroyed so far as those streets are concerned. The fact that those streets, at the place where the attempt is made to permanently close them, abut upon a railway embankment twenty feet in height is a mere adventitious circumstance. The city has power to pierce that embankment by a subway where it crosses said streets whenever the needs of an increased population in that locality shall require such subway to be opened and used. If these portions of streets are now public highways under the evidence in the case, it would be against public policy to allow them to be closed and retained as the private property of appellant, only to be re-taken by purchase or condemnation when the needs for a subway and for a more general use of the streets shall become apparent. A subway is possibly not needed

now at that place, there being one a block either way from there, but if the appellee is correct in claiming that Fairfield avenue but for the railroad would be one of the main thoroughfares of that portion of Chicago, and that West George street is populated both on the east and west sides of the railroad, it will not be many years until a demand will arise for a subway at this place. We do not regard as sound the assumption of appellant to the effect the city or the public can never use these stub ends of streets by reason of their unique location, (next to the railroad embankment,) and that hence they are of no value to the city or the public.

Appellant further contends by its bill, and renews that contention here, that the improvements placed by it or its predecessors upon the street ends in question and there suffered by the city to remain through a long period of time worked an equitable estoppel upon the appellee, so that it cannot now be permitted to assert its right in these streets even if that right were not lost through the deeds of vacation. It is true the two street ends are now occupied or crossed by railroad and street car tracks, but such use of the surface of the streets is in no way interfered with by the decree in this cause. A coal shed projects a few feet into North Fairfield avenue at the place in controversy, which is of comparatively little value, and otherwise the streets are not shown to be occupied by buildings or structures of appellant of any considerable value. We think the doctrine of equitable estoppel does not apply.

The most serious dispute as to the facts arose over the question of the acceptance by the city of the portions of streets sought to be vacated, appellant claiming there was never any acceptance and appellee taking the position that by its undisputed acceptance of other streets in the addition and of other portions of these streets it should be held to have accepted the entire system of streets and alleys shown

by the original plat, and also that it specifically recognized and accepted the particular portions of the streets in controversy, and that to thereafter allow the vacation of the premises in dispute will not only deprive the municipality of its vested rights, but will operate to deprive other property owners in the subdivision of property rights without due process of law. In the absence of a contrary intention being shown, we have held acceptance by a municipality of the principal portion or nearly all of the streets of a subdivision raises the presumption of acceptance by it of all of the streets in the subdivision. (*Kimball* v. *City of Chicago,* 253 Ill. 105; *Village of Lee* v. *Harris,* 206 id. 428.) Also, that evidence of the acceptance of streets by a city is found in the affirmative act of taking possession thereof for the purpose of placing therein water mains or sewers. (*City of Rock Island* v. *Starkey,* 189 Ill. 515; *Fairbury Agricultural Board* v. *Holly,* 169 id. 9; *Barrows* v. *City of Sycamore,* 150 id. 588.) The evidence in the case at bar shows, and the court found, that in 1893, in pursuance of an ordinance the appellee laid a water main in North Fairfield avenue, passing under the railroad tracks, (which were not elevated until 1898,) and extending some distance north and south from the tracks, and in 1895 laid another in West George street to the center of its junction with North Fairfield avenue, which mains are still in use. The proofs also show the city, in accordance with another ordinance, laid sewers in the middle of North Fairfield avenue and in the middle of West George street to the point of intersection of the two streets. Another method of proving acceptance of streets by a municipality is to show general user thereof by the public for a considerable period of time, and such user was satisfactorily shown in the case at bar. (*Kimball* v. *City of Chicago, supra; City of Rock Island* v. *Starkey, supra.*) We are therefore convinced that by each of the methods herein mentioned appellee accepted

North Fairfield avenue and West George street, including these stub ends, and is now in possession of the stub end of North Fairfield avenue by and through the location of its water main therein.

The proof shows the appellee has never worked or improved the stub ends in question, except as above recited, and the appellant contends that such fact contradicts any presumption of acceptance thereof. But it was said in the case of *Village of Lee* v. *Harris, supra:* "The fact that a number of the streets and alleys had never been improved by the village and had been for some years within the enclosure of private persons had no potency to defeat the action of the village. Whether the interests of the public require that a street or alley shall be improved or that repairs thereon are necessary is committed to the judgment and discretion of the governing board of the city or village. Mere adverse possession by a lot owner of a portion of a public street, however long continued, does not, by virtue of the Statute of Limitations, bar the right of the public to be restored to possession of the street to its full width. (*City of DeKalb* v. *Luney,* 193 Ill. 185.) Mere non-user of a street or alley, no matter how long continued, does not deprive the city or village, as the representative of the public, of the right to take possession thereof and improve the same."

Unquestionably, the right of vacation exists as to part of a subdivision, under the provisions of said section 7 of chapter 109, as we have construed the same in the *Pressed Brick Co. case, supra,* and the *Heppes Co. case, supra,* even after acceptance by the city, but in view of the rights of those who had purchased lots prior to the attempt to make such vacation, near to and dependent for outlet upon the streets in question, we hold such right was not successfully exercised in this case. The "rights and privileges" accorded to those lot owners who had purchased before the

attempted vacations are not confined to the surface use of the street but extend below, to the sewers and water mains; also, they are not confined to the use of that portion of the street upon which their property abuts, but extend to present, and, more important still, to future, use of the street as a means of ingress and egress to and from the property so purchased. The law does not contemplate that having purchased with a view to streets furnishing suitable and convenient passways to other portions of the community, the purchaser should thereafter, at the will of the original or subsequent owner of some portion of the subdivision, find himself located in a *cul de sac,* as would be the case here with lot owners on the east side of North Fairfield avenue and the north side of West George street.

We think, also, it would be contrary to public policy to declare the street ends in question, under the proofs in the case at bar, the private property of appellant, and so enable it to require the city to remove therefrom its public service water pipes, laid, as before stated, in the year 1893, under the surface of North Fairfield avenue, extending both north and south of the railroad right of way. While the claim of private ownership has been maturing, the wooden sidewalks placed upon the street ends in question by owners of lots in the subdivision have grown old, rotted away and disappeared, but, so far as the evidence discloses, the sewers leading to the street intersection are still there, as is the water pipe aforementioned.

We are not of opinion appellant is equitably entitled to the relief prayed in and by its amended bill, and the decree of the circuit court is affirmed.    *Decree affirmed.*