(No. 47097

PAMELA WARZYNSKI, Appellee, v. VILLAGE OF DOLTON *et al.*—(The Village of Dolton, Appellant, v. Martin Novak, Appellee.)

Opinion filed Sept. 26, 1975.—Rehearing denied Nov. 21, 1975.

DAVIS, GOLDENHERSH and KLUCZYNSKI, JJ., dissenting.

Glazer & Cohan, Ltd., of Chicago (Frank Glazer, of counsel), for appellant.

Lisco and Field, of Chicago (Sidney Z. Karasik, of Chicago), for appellee Pamela Warzynski.

Jacobs, Williams and Montgomery, Ltd., of Chicago (Barry L. Kroll, of counsel), for appellee Martin Novak.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

About midnight on March 24, 1968, the plaintiff, Pamela Warzynski, who was a passenger in a car driven by Martin Novak, suffered severe lacerations to her head and face when, as the result of a sudden stop, she was thrown forward into the windshield. The abrupt stop occurred when the car struck a manhole cover that protruded above the unpaved surface of the unlit, gravel-covered road into which Novak had turned. The area in question was within the Village of Dolton.

The plaintiff's complaint was brought against both Novak and the Village of Dolton. It alleged that Novak had been negligent in his operation of the motor vehicle and that the Village had been negligent in its upkeep of the road. The Village filed a third-party complaint against Novak, seeking indemnification from him in the event it should be found liable. At trial, the plaintiff dismissed her action against Novak and proceeded solely against the Village. A verdict in the sum of $20,000 was returned in her favor, and a verdict in the same amount was returned in favor of the Village and against Novak in the third-party action. Both the Village and Novak appealed from the judgments entered on the verdicts. The Appellate Court, First District, affirmed the judgment against the Village but reversed the judgment against Novak (23 Ill. App. 3d 50). We granted leave to appeal.

Two questions are presented: (1) whether the Village was properly held responsible for maintenance of the

surface of the road; and, if so, (2) whether it was entitled to indemnification from Novak.

The resolution of the first issue depends upon whether the unpaved road in question, referred to as 155th Place, had been accepted by the Village after it had been offered for dedication by its private developer. It is the position of the Village that the evidence was insufficient as a matter of law to establish acceptance, and that therefore the road was not the responsibility of the Village at the time of the accident. We agree.

Dante Avenue is a paved north and south street in the Village of Dolton. It dead-ends at the unpaved road on which the accident occurred. That road, referred to as 155th Place, runs east from Dante to Blackstone Avenue, a distance of less than 240 feet. It is located within a residential subdivision that was being developed by sub-dividers and contractors referred to in the record as "Henning & Johnson." When Henning & Johnson filed the plat of the proposed subdivision, 155th Place was designated as a dedicated street. Both parties apparently agree that this was sufficient to constitute an offer of dedication.

As the development progressed, the contractor laid out the roads according to the plat. The roads were prepared for surfacing, but the contractor appears to have postponed that step until residences were built along them. At the time of the accident, no residences had been built along 155th Place. Although the contractor had put up a street sign, the surface of the road had not yet been brought up to grade or paved. The Village admitted in its answer, however, that it "kept, maintained, supervised, operated and controlled a certain water main on 155th Place at or near Dante Avenue in said Village."

The Superintendent of Public Works for the Village, Maurice Albrect, testified that it was the policy of the Village to accept privately developed roads only after they had been brought into conformity with Village standards.

He said that the paved roads in this subdivision had been so accepted, but that 155th Place and other unpaved roads had not. His department had undertaken repairs on accepted streets and had kept them snow-plowed in winter, but had done no snow-plowing or any other road work on 155th Place or other unaccepted roads in the subdivision. The only contact which the Village ever seems to have had with this road was through the operation of the water main referred to in the answer of the Village.

The plaintiff points to several factors which she urges are sufficient to show public acceptance of the offered dedication of 155th Place: (1) the alleged issuance by the Village of construction permits for the installation of curbs and drains in the road; (2) the acquiescence in the installation of the street sign which met Village standards and bore the description "155th Place"; (3) the failure of the Village to place barricades at the west end of the road; (4) the necessary and beneficial use of the road by the public; and (5) the operation of a water main by the Village "on 155th Place at or near Dante Avenue." The plaintiff argues that the cumulative weight of these factors was sufficient to permit the jury to find that the offered dedication of the road had been accepted by the Village.

We do not think that any weight can be given to the first factor. Building permits are normally required for all private construction work, in order to ensure compliance with prescribed standards. Issuance of a permit for the construction of a private road does not automatically convert it into a public street.

The erection of a standard street sign for 155th Place was also a private act, apparently done as part of the work required in order to bring the road into conformity with Village standards so that the Village would accept it. In our opinion the Village did not, by permitting work of this kind to proceed, bar itself from requiring that the street be paved and otherwise completed by the private developer before the taxpayers of the Village could be compelled to

assume the burden of repairing and maintaining it.

The third factor, which concerns the Village's failure to barricade the uncompleted street, actually militates against the plaintiff's argument, since the erection of barricades would have suggested that the Village regarded the uncompleted project as its own to safeguard and maintain. Albrect testified that the Village did not obstruct 155th Place because that area was regarded as the responsibility of the owners of the property—"the contractors."

So far as public use is concerned, the evidence showed only that the road was occasionally used by some people as a shortcut between the two parallel streets which it was intended to connect. It also showed, however, that there were other streets available for that purpose. Indeed, an impressive indication of the infrequency of public travel on 155th Place was the testimony of codefendant Novak that he had previously used the area as a place to "park" with his dates, and that he had gone there for that purpose on the night of the accident.

But the plaintiff argues that the operation by the Village of a water main under the road is sufficient of itself to show acceptance of the offered dedication. She relies heavily upon the following language from *Trustees of Schools v. Dassow* (1926), 321 Ill. 346, 352-53:

> "*** Acceptance of streets by a city or Village may be shown by the affirmative act of taking possession thereof for purposes of placing water mains or sewers therein or by the general user by the public for a considerable period of time."

In the present case the Village did not take possession of the area in question "for purposes of placing water mains or sewers therein." The water main, the sewer and the manhole were placed there by the subdividers, and not by the Village.

Any public benefit that might have resulted from

acceptance of the road in its unfinished condition was minimal, and would have been more than offset by the substantial expense involved in paving and otherwise improving the road and keeping it in repair. This court has long adhered to the position that private parties are not free to impose such burdens upon the public by means of an unaccepted offer of dedication. See *Littler v. City of Lincoln* (1883), 106 Ill. 353, 368; *People ex rel. Shurtz v. Commissioners of Highways* (1869), 52 Ill. 498.

Decisions like *Kennedy v. Town of Normal* (1934), 359 Ill. 306, *Kimball v. City of Chicago* (1911), 253 Ill. 105, and *Village of Lee v. Harris* (1903), 206 Ill. 428, did not involve efforts to impose upon the taxpayers of a municipality responsibility for the maintenance of streets which it has not accepted. Concerning an effort to impose unwilling acceptance of a dedicated street upon a municipality, the court said in *Clokey v. Wabash Ry. Co.* (1933), 353 Ill. 349, 365, 366, 369:

"A municipal corporation cannot, by the mere making and recording of a plat by a property owner, be required to accept the public places dedicated to it thereby. The dedicator cannot in that way impose upon the public authorities the burden of caring for the streets and alleys included in the subdivision of a property, nor can the municipality be required to open and improve such streets or be held liable for damages occasioned by reason of their unsafe condition until it has actually accepted such streets. (*Littler v. City of Lincoln,* 106 Ill. 353; *Hamilton v. Chicago, Burlington and Quincy Railroad Co.,* 124 id. 235; *Nimpfer v. Village of Fox Lake, supra.*) The public authorities have a right to determine whether or not they will accept a tract purported to be dedicated as a road for a public highway as a charge upon the municipality for the maintenance thereof, and until they have so accepted

the public way the road or street does not become a public thoroughfare. *** The evidence in this case shows that the town of Decatur did not, through any of its duly constituted officers, ever accept the alleged public road. No work was ever done upon it, no money expended for its improvement, and no attempt was ever made by the highway commissioner of the town of Decatur to open up the alleged road. ***

It is, however, contended by the complainant, that because of the acceptance by the public of other streets and roads shown on the plat of Geddes suburb there was an acceptance of all streets so shown. Such is not the law in this State. A municipality may accept a part of the streets shown upon a plat and reject a part of the streets, or as to a particular street it may accept a part and reject the remainder of the same street. *Hoerrmann v. Wabash Railway Co.*, 309 Ill. 524; *Russell v. Chicago and Milwaukee Electric Railway Co.*, 205 id. 155; *People v. Massieon*, 279 id. 312; *Jordan v. City of Chenoa*, 166 id. 530.

* * *

The public authorities have constantly refused at all times to accept the way in dispute or to assume any control over it or to expend any money by way of any improvement or up-keep. The law does not impose any duty of that kind on them."

Since we hold that the completion and maintenance of the road upon which the plaintiff was injured was the responsibility of the private owners, the judgment against the Village cannot stand. And since that judgment must be reversed, we have no occasion to consider the question of Novak's obligation to indemnify the Village. The fact that we do not discuss this issue does not indicate approval of the opinion of the appellate court concerning it.

The judgments of the circuit and appellate courts against the Village are reversed.

*Judgments reversed.*

MR. JUSTICE DAVIS, dissenting:

In this case the evidence established that the defendant, Village of Dolton, knew or was charged with knowledge of the danger or defect causing the injury.

The evidence established that the dangerous condition had existed for at least two years prior to the occurrence and that the Village therefore had at least constructive notice of the defect. For these reasons, the judgments of the circuit and appellate courts should be affirmed.

MR. JUSTICE GOLDENHERSH, with whom MR. JUSTICE KLUCZYNSKI joins, dissenting:

Mr. Justice Kluczynski and I dissent. An examination of the evidence and the authorities demonstrates that the majority overlooked evidence relevant to the issues and by reason of the oversight applied an erroneous rule of law.

The record shows that 155th Place was platted and dedicated as a part of "Hennings E. Johnson's 2nd Addition to Meadow Lane Subdivision." Also platted and dedicated were Dorchester Avenue, Blackstone Avenue, Dante Avenue, 154th Place, 155th Place, Sunset Drive and 156th Street. It cannot be determined from the record when Dorchester, Blackstone and Dante Avenues were paved but the testimony shows that these are the principal thoroughfares in that area.

There is no evidence that the Village of Dolton, at any time, in any manner, indicated an intent not to accept 155th Place. Although 155th Place was not paved, the Village, in its answer, admitted the allegation of plaintiff's amended complaint that it "*** kept, maintained, supervised, operated and controlled a certain water main on 155th Place at or near Dante Avenue ***." The rule applicable to these facts was stated in *Consumers Co. v.*

*City of Chicago,* 268 Ill. 113, 132: "In the absence of a contrary intention being shown, we have held acceptance by a municipality of the principal portion or nearly all of the streets of a subdivision raises the presumption of acceptance by it of all of the streets in the subdivision. (*Kimball v. City of Chicago,* 253 Ill. 105; *Village of Lee v. Harris,* 206 id. 428.) Also, that evidence of the acceptance of streets by a city is found in the affirmative act of taking possession thereof for the purpose of placing therein water mains or sewers." In *Kennedy v. Town of Normal,* 359 Ill. 306, 311-12, the court said: "A municipality may accept a part of the streets and alleys shown upon a plat and reject a part of them, or as to a particular street or alley it may accept a part and reject the remainder of it, (*Clokey v. Wabash Railway Co.,* 353 Ill. 349,) but where the city accepts the most important streets of an addition or the major portion of them, and has evinced no intention to refuse to accept any of them, it will be deemed to have accepted all of the streets and alleys of that addition."

The question whether the defendant village had accepted 155th Place was one of fact for the jury. Its verdict finds ample support in this record and the judgment should be affirmed.