FIDELIA L. HEWES *et al.*

*v.*

THE VILLAGE OF CRETE.

*Opinion filed October 24, 1898.*

1. DEDICATION—*fee of offered street does not vest in municipality before acceptance.* Notwithstanding the making, acknowledging and recording of a plat showing the streets intended to be dedicated, as required by the statute, the fee of such streets does not vest in the municipality until acceptance.

2. SAME—*what not an acceptance of strip enclosed within fences.* An order of highway commissioners laying out a new road, with its boundary lines co-incident with fences formerly erected as being the boundary of an old street properly platted but never accepted by the municipality, is not an acceptance of a portion of the old street included within such fences, but rather implies a refusal to accept, although the petition asked that such strip be vacated.

3. SAME—*the public rights in enclosed strip along street may be lost by abandonment.* Public rights in land originally part of a platted street, but enclosed within fences of abutting owners and treated by them as their private property without interruption by the municipality for over thirty years, are lost by abandonment.

WRIT OF ERROR to the Circuit Court of Will county; the Hon. CHARLES BLANCHARD, Judge, presiding.

HILL, HAVEN & HILL, for plaintiffs in error.

C. W. BROWN, for defendant in error.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

This was an agreed case, submitting certain questions of law and fact to the court without a jury, reserving all rights of appeal and writ of error. The court found in favor of the defendant in error, and entered a decree accordingly. An appeal was taken to the Appellate Court by plaintiffs in error, and the defendant in error moved to dismiss the appeal, which motion was overruled, and the cause was submitted and the decree of the circuit court reversed, with directions to find for plaintiffs in error. (*Hewes* v. *Village of Crete*, 68 Ill. App. 305.) A writ of error was then sued out to this court by the village of Crete, and this court reversed the judgment of the Appellate Court and remanded the cause with directions to dismiss the appeal, on the ground that such court was without jurisdiction, as the decision of the case necessarily involved a freehold. (*Village of Crete* v. *Hewes*, 168 Ill. 330.) Thereupon plaintiffs in error sued out this writ of error to the trial court, and the case is now before us for determination upon the merits.

The matters submitted to the circuit court were as follows: First, whether or not the fences on or near the west line of Benton street, in the village of Crete, extending from the north line of North street south along the front or near the front of the properties then owned by the plaintiffs in error, are upon the true west line of Benton street in front of their properties; second, if said fences are not upon the true west line of Benton street in front of said properties, then how far to the east or west of where they then stood said true west line was or should be; third, if said fences should be found not to be upon the true west line of Benton street in front of said properties, then whether or not, as against the village of Crete, the owners of the said properties were or were not entitled to have and maintain said fences as they then stood.

The court found that the fences in question were not upon the true west line of Benton street; that the true width of Benton street was 66 feet; that the said fences were 12.2 feet east of the west line of said street at the north line of said properties, and 10.7 feet east at the south line, encroaching by that much on said street; that as against the village of Crete the owners did not have the right to have said fences maintained where they stood within the limits of the street, but that they constituted an unlawful obstruction, and ordered them removed.

On the fifth day of October, 1848, one Willard Wood caused a plat and survey of the town of Crete to be made, and said plat was duly acknowledged and recorded. One of the streets bore the name of Benton. The town of Crete was never incorporated. The village of Crete, the defendant in error, was incorporated in 1880, and included the territory platted as the town of Crete, and its plat adopted the streets, alleys, lots and blocks of that town and also the names given to such streets. The plaintiffs in error claimed and introduced testimony tending to show that they or their grantors were the owners of the property in question, abutting on the west side of Benton street, long before the incorporation of the village and more than thirty years before the institution of this proceeding, and that the fences in question had been maintained where they now stand for the same period of time, and that the strip of ground within the fences, and claimed to be a part of Benton street, had been in the actual, open and adverse possession of themselves or their grantors for the same period of time. They further claim that the dedication of the street or highway was never accepted in any way by the public authorities. They also offered in evidence a petition, dated May 6, 1873, claiming to be signed by seventy-five legal voters, asking the highway commissioners of the town of Crete to lay out a certain road and cause it to be opened ac-

cording to law, described as "commencing at the Joliet
and Crown Point road at a point between block 4 and lot
owned by George Smith, in the village of Crete; running
thence along Benton street to the north end thereof;
thence north to a point east of the road and street be-
tween F. Edgerly and depot building; thence west to
railroad track at said Edgerly; and, should said commis-
sioners deem it advisable and proper, to vacate so much
of Benton street on the west side as is now enclosed, and
to lay new road not to exceed fifty feet, that being about
the width now used as a road. It is understood that
D. E. Hewes, owner of the land through which said road
passes, makes no claims for damages," etc.

The Joliet and Crown Point road was the street run-
ning east and west on the south of block 4, and the prop-
erty of plaintiffs in error is the east half of that block,
except the south 57 feet, and fronts on Benton street.
The commissioners made a preliminary order determin-
ing to grant the prayer of the petition, and on Septem-
ber 5, 1873, entered a final order laying out said road as
a public highway 50 feet wide, which order describes the
starting point as being "at a point 0.40 links west of the
east side of Benton street as now traveled and fenced,
on north side of Joliet and Crown Point road," and con-
tains the following statement: "Passing on and over
Benton street and of the land of D. E. Hewes."

The fences which were alleged to be an obstruction
in Benton street were first erected in 1858 by the then
owner of the property, and since then have been repaired
from time to time and maintained on the same line by
him and his successors in interest. A sidewalk was built
along and outside of this fence in 1863, and a part of the
way, on the same line, a new walk was built by the prop-
erty owner, by order of the village authorities, in 1891.
Trees and shrubbery had been planted on the strip in
controversy, and the former, with other native trees, had

grown to large size, and the opening of the street as decreed below would bring the line very near, if not quite up to, the house of plaintiff in error Doescher.

It is the settled doctrine in this State, that, notwithstanding the making, acknowledging and recording of a plat showing the streets thereon intended to be dedicated, as required by the statute, the fee of the streets does not vest in the municipality until the acceptance thereof. (*Hamilton* v. *Chicago, Burlington and Quincy Railroad Co.* 124 Ill. 235; *Jordan* v. *City of Chenoa,* 166 id. 530.) There was never any acceptance of this plat, nor the street in question, by the public authorities until the incorporation of the village, in 1880, unless the action of the commissioners of highways upon the petition, in 1873, can be treated as an acceptance. From the time of the recording of the plat, in 1849, until the making of the preliminary order by the commissioners of highways granting the prayer of the petition, in 1873,—a period of twenty-four years,—there was no action whatever by the public authorities indicating that the said proffered dedication had been or would be accepted. The property owners retained possession of the strip and treated it as a part of their property. The final order of the commissioners laying out the new road in Benton street 50 feet wide, with its western line coincident with the fences in question, cannot be construed as an acceptance of the dedication of so much of Benton street as was enclosed by these fences, but, on the contrary, implied a refusal to accept such dedication. As this final order was silent on the question of vacating the street so far as it included the strip inside of the fences, it could not, under the statute, have that effect, but we are of the opinion that the action taken by the commissioners, in view of the fact that there had never been any acceptance of the dedication of the street or highway, and that the strip in controversy had remained in the possession and exclusive control of the property owners and was claimed by

them as their property, indicates an acquiescence in such claim on the part of the only public authorities then in existence having any power over public streets or highways, and a refusal to accept the dedication so far as it had included the strip in controversy.  This action of the commissioners we regard as strong evidence, in connection with other circumstances, of an abandonment of so much of said alleged street as included this strip lying inside of the fences.  This view is not affected by the fact that after this final action taken by the commissioners the order was, in a proper judicial proceeding, declared void so far as it authorized the opening of the road which it laid out through land north of the property in question, on the ground that it made no provision for compensation for land taken.  There was no village of Crete till seven years later, and even after its organization it made no claim to this strip as a part of the street until the year 1894, but, on the contrary, had ordered the repair and building of sidewalks with reference to the street as it had for so many years been open, which order or orders had been complied with by the property owners.

We are of the opinion that all public rights in or to the strip in controversy as a part of Benton street had been abandoned long before the beginning of this suit, and that the property owners had acted upon such abandonment, and that by abandonment the public and the village of Crete have lost all right to said strip.  *Village of Vermont* v. *Miller*, 161 Ill. 210.

Other questions have been raised and discussed, but in view of what has been said above their decision is unnecessary.

The judgment is reversed and the cause remanded to the circuit court for further proceedings not inconsistent with the views we have expressed.

*Reversed and remanded.*