(No. 15499.—Decree affirmed.)

ANNA HOERRMANN, Appellant, *vs.* THE WABASH RAILWAY
COMPANY *et al.* Appellees.

*Opinion filed October 20, 1923.*

1. MUNICIPAL CORPORATIONS—*judgment of village board as to
public necessity for street is final if fairly exercised.* The care and
supervision of the streets of a village are committed by law to the
president and board of trustees, and their judgment as to the pub-
lic necessity for a street and what the interest of the public re-
quires, if fairly exercised, is not subject to control by the courts.

2. SAME—*the courts may interfere if fraud has intervened.* If
fraud has intervened in the matter of vacating a village street, and
the power of the village board has been exercised with reference
to private interests without regard to public interests, the courts
may interfere and declare void the action of the board.

3. SAME—*motives of village board cannot be questioned.* In the
matter of controlling the streets of a village the trustees are pre-
sumed to act from honest motives, and it is only when it is appar-
ent that no regard whatever has been given to the public interest
that their action will be declared void by the courts.

4. SAME—*when court will not enjoin enforcement of vacation
ordinance.* A village ordinance vacating a portion of a street ad-
joining a railroad right of way, leaving the street forty-two feet
wide, will not be held void and its enforcement enjoined at the suit
of an abutting property owner, even though the railroad company
may benefit by the ordinance, where there is also a public benefit,
but the complainant may recover at law such damages as she has
sustained by such vacation.

5. PLATS—*approval of plat by village board is not an accept-
ance of streets.* Approval by a village board of the plat of a sub-
division is evidence that the plat complies with the statutes and
ordinances but is not evidence of an acceptance of the streets.

6. PLEADING—*when refusal to permit amendments of the bill is
proper.* After the evidence in a suit to declare a vacation ordi-
nance void and to enjoin a railroad company from maintaining
obstructions in the street has been heard and the cause submitted
for decision under a stipulation that no further evidence be heard,
it is not error to refuse to allow amendments to the bill to be filed
which change the cause of action by alleging that such obstruc-
tions are being maintained in an offensive manner.

7. SAME—*allowing amendment after issue is formed rests in discretion of court.* The allowance of an amendment to a bill after the issue has been formed is a matter largely within the discretion of the court, and new matter changing the character of the bill and making substantially a new case cannot generally be introduced after the cause is set down for hearing.

APPEAL from the Circuit Court of Will county; the Hon. FREDERICK A. HILL, Judge, presiding.

P. C. HALEY, and ROBERT E. HALEY, for appellant.

BARR & BARR, and DONOVAN, BRAY & GRAY, (J. V. BARTLEY, and JAMES A. BRAY, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

A bill was filed in the circuit court of Will county against the Wabash Railway Company and the village of Manhattan, praying for a decree declaring an ordinance of the village vacating a part of Front street void and restraining the Wabash Railway Company from obstructing Front street or continuing to occupy exclusively any part of it for its private use and restraining the village from permitting any such acts by the railway company. Gustav Hoerrmann and Anna Hoerrmann, his wife, were the original complainants. During the progress of the suit Hoerrmann died and the suit was revived in the name of Anna Hoerrmann, who by virtue of his will succeeded to all his rights. Answers were filed, as well as a cross-bill by the village of Manhattan, issues were joined, the cause was heard by Judge Dibell and was taken under advisement, but before it was decided he died. By a stipulation of the parties the evidence which had been heard was transcribed by the reporter, the cause was submitted for decision to Judge Frederick A. Hill upon the pleadings and transcript of the evidence with such argument as counsel should present, it being stipulated that no further evidence should be heard, and a

decree was entered dismissing both the bill and the cross-bill for want of equity. The complainant in the original bill has appealed to this court, the judge having certified that the validity of a municipal ordinance was involved and that in his opinion the case should be passed upon by the Supreme Court, and the village of Manhattan has assigned cross-errors on the dismissal of its cross-bill.

It is unnecessary to set forth the pleadings in detail. The facts alleged and proved, so far as they are material, are as follows: On September 24, 1879, Elihu Trask, who was the owner of the west half of the northeast quarter of section 20, town 34, north, range 11, east of the third principal meridian, in Will county, conveyed to the Chicago and Strawn Railway Company a strip of land 66 feet wide, being 33 feet on each side of the center of the track of the railway company as it was then located across the tract of land above described. On October 21, 1881, a public highway was laid out by a committee of the board of supervisors of Will county on appeal from the decision of the highway commissioners of the town of Manhattan on a petition to lay out a road 60 feet wide. The road as laid out was described as commencing at the center of the west line of the northwest quarter of section 20; running thence east to the Wabash railway lands; thence north 19½ degrees, east along the west bounds of said railway lands to the road leading from the Twelve-mile grove to Joliet, for a more particular description of which reference was made to the plat and survey annexed and made by J. M. Pierce, deputy county surveyor. The damages awarded by the committee were paid to Trask, the owner of the land, and the road became a duly established highway. A reference to the plat and survey annexed shows the highway thus laid out was 60 feet wide from the beginning of the road at the west side of the section "to the railway station ground, thence 50 feet wide to the State road." The plat shows the railroad and the Manhattan station grounds with a jog in

the east line of the road at the south end of the plat of the
station grounds and with the figures "50" between the lines
indicating the road at this point and also near the State
road, and the figures "60" at the place where the road turns
north along the railroad right of way. It is clear that at
this jog the width of the road was reduced to 50 feet.
This left a strip along the west side of the right of way
of the railway company 10 feet wide between the right of
way and the highway. On November 4, 1881, Trask exe-
cuted a deed to the Chicago and Strawn Railway Company
conveying "a strip of land 17 feet wide on the westerly side
of a strip of land 33 feet wide already conveyed to said rail-
way company, said 17 feet to be left open for public travel
and use, running in a southwesterly direction and parallel
thereto a distance of 656 feet, beginning at the center of
the highway known as the Joliet and Twelve-mile Grove
road." This deed conveyed the 10-foot strip between the
original right of way and the highway but not as a right
of way of the railway company. It was to be kept open
for public travel and use, and the use of it for the exclu-
sive purposes of the railway company was excluded by the
terms of the conveyance. The deed also conveyed the fee
in seven feet off the east side of the highway, subject to
the easement of the public, but this did not convey any
right of way to the railway company over this seven feet
which was already a part of the highway. The railroad
right of way still extended only 33 feet west of the cen-
ter of the track. The Wabash Railway Company succeeded
to the title of the Chicago and Strawn Railway Company,
the railroad was constructed, and the original depot at Man-
hattan was built in 1880, with its west side on the west line
of the 33-foot right of way west of the track. The village
of Manhattan was organized in 1886, including the high-
way from its junction with the Twelve-mile Grove road
southwest, parallel with the railroad track to the point where
it turns west. This part of the highway thus became sub-

ject to the jurisdiction and control of the village and is now known as Front street. Through the village from the south the course of the railroad is north 19 degrees 22 minutes east, and that of State street, north 26 degrees 33 minutes west. In March, 1912, a part of the property west of the railroad was platted, as McDougal's subdivision, into lots numbered from 1 to 49, inclusive, lots from 21 to 31, inclusive, facing State street and from 32 to 49, inclusive, facing Front street, with a street on the south end of the subdivision. The part of the subdivision facing Front street extends about 600 feet south of its intersection with State street and is opposite the railroad depot and other structures. The appellant and her husband acquired title to these lots and the other land fronting upon the west side of Front street on April 1, 1912, and owned all this property until his death, when he devised it to her.

The original depot, which was a few feet south of the intersection of the railroad with State street, was burned in 1909 and a new one was built, which extended eight feet west of the original 33-foot right of way. At the same time a toilet was built south of the depot. Other structures which had been previously placed on the right of way, or the 10-foot strip conveyed by Trask, were a coal and oil house, a water-tank, a hand-car house, a motor-car house and a pump house. A large well near the pump house was dug in 1886, and extended 39 feet west of the center of the main track. South of these structures were a shed, a section house a story-and-a-half high, 16 by 36 feet in size, and a chicken house. All of these were on the 17-foot strip and extended to its west line. In 1912 a new steel water-tank was constructed, with an enlarged capacity, in place of the old wooden tank and located about 30 feet north of the old one, a toilet house was built south of the section house, and further south a box-car body without running gear was set on the ground for living purposes. In 1912, also, the railway company built entirely south of the 17-foot

strip a coal-chute within the 33 feet of the right of way of the railway company. This chute was just north of the east and west highway at the south end of Front street, and there was a side-track about 365 feet long leading to it, which left the main track about at the south end of the 17-foot strip. There was also a coal-storage track just west of this side-track, which extended past the coal-chute and was wholly in the street. This siding is on an embankment which extends still farther into the street.

On the appellant's property on the south end of Front street, opposite the coal-chute and the coal-storage track, are three residences. On the north end, nearly opposite the water-tank, is a blacksmith shop, and further north, opposite the depot, are two buildings used as warehouses for the storage of implements. There are no residences on any of the lots facing Front street. State street is the main street of Manhattan, which is a village having a population of 525 according to the last census. Ten years before, its population was 443; ten years before that, 393. There are some business buildings on the north side of North street, an east and west street, which State street enters a few rods northwest of its intersection with Front street, and a number of residences in the northwest part of the village. The greater part of the business section of the village is on the east side of the railroad, where are several stores, two banks, the post-office, the school house and most of the churches.

Gustav Hoerrmann and his wife, after their purchase of the property on the west side of the railroad, made numerous complaints through one of their sons to the village board of encroachments by the railway company on the street, and the railway company entered into negotiations with them for the purchase of sufficient land on the west side of the street to widen it to the full 50 feet, but no agreement was reached. On December 18, 1916, the village brought an action of ejectment against the railway company in the circuit court for the possession of a portion of the

309—34

street 18 feet wide immediately adjoining the west line of the right of way of the railway company, extending from State street south to the east and west road. This suit was settled by the railway company paying to the village $1000 for the payment of all damages which might arise from the vacation of a part of Front street by the passage of the ordinance in question, and by the entry of a judgment in favor of the railway company. The ordinance was passed on April 1, 1919, the judgment was entered on April 17, and the money was paid to the village on April 19.

While a great volume of evidence was introduced, much of it is immaterial to the determination of the case in accordance with our views. There was no substantial difference in the evidence as to matters which we regard as material to the questions to be determined. The material questions to be considered concern the description of the part of the street vacated, the power of the trustees of the village to vacate the street, the action of the court in refusing leave to the complainant to make certain amendments to her bill, and the alleged dedication and acceptance of seven feet on the west side of the street by the platting of McDougal's subdivision. The other questions which appear in the record and have been argued are dependent on these, and the disposition of these in accordance with our view will render a consideration of the others unnecessary.

The ordinance vacated "a part of Front street in said village described as a strip 18 feet wide immediately adjoining the westerly line of the right of way of the Wabash railroad in said village, and extending from the southwesterly line of State street to the north line of the highway extending east and west along the quarter section line in section 20," etc. It is contended by the appellant that it is doubtful whether by this language is meant the 18 feet west of the 17-foot strip deeded by Trask to the railway company, and that the ordinance is void for the doubtful description. The appellees contend that there can be no doubt

of the intention of the village board, and the railway company by its answer expressly disclaims any right to an 18-foot strip west of the 17-foot strip deeded by Trask. Its counsel say in their brief that it expressly disclaims any right to any portion of Front street other than the 18 feet immediately adjoining its original right of way. The original right of way was 33 feet west of the center line of the track. Trask's deed conveyed 17 feet more to the railway company but not as right of way, for it was all required to be left open and was subject to public use and travel. The ordinance in vacating 18 feet immediately adjoining the westerly line of the right of way, referred to the line of the original right of way 33 feet west of the center of the track.

The village holds its streets in trust for the benefit of the public and the care and supervision of the streets are committed by law to the president and board of trustees. Their judgment as to the public necessity for a street and what the interest of the public requires, if fairly exercised, is not subject to the control of the courts. If fraud has intervened and the power of the trustees has been exercised with reference to private interests, without regard to the public interests, their action may be adjudged void. The motives of the trustees, however, cannot be called in question. They are presumed to act from honest motives, and it is only where it is apparent that no regard whatever has been given to the public interest that their action will be held void. However much the court may disagree with the wisdom of their conclusion or the correctness of their judgment as to the public interests, it will not undertake to substitute its judgment for that of the trustees. These principles have been announced by this court in many decisions, the latest of which are *Wolbach* v. *Rubens,* 307 Ill. 186, *People* v. *Elgin, Joliet and Eastern Railway Co.* 298 id. 574, *People* v. *Atkins,* 295 id. 165, *People* v. *Benson,* 294 id. 236, and *People* v. *Corn Products Co.* 286 id. 226.

Whether a street 42 feet wide sufficiently meets the public interest is a question primarily for the board of trustees to determine. That question depends upon the character of the locality and its relation to other parts of the village, the manner of its present or probable future use, the nature and amount of the established business, and present and probable future requirements of the public. It is not a judicial question but a legislative question and one which is entirely committed to the discretion of the trustees. There are no stores on the appellant's land; no business is conducted there. If in the judgment of the trustees the present and future requirements of the public are sufficiently accommodated by the street as it exists or as it will remain after the vacation ordinance takes effect, we would not be justified in holding that their judgment is not based upon the interest of the public but of the railway company. The village frees itself from maintaining the street to an unnecessary width and the accommodation of the public in the use of the street is not materially diminished. The fact that the railway company benefits by the vacation does not affect the power of the village to make it. The appellant is entitled to recover whatever damage her property has suffered by the vacation of the street but she is not entitled to enjoin its vacation.

During the examination of a son of the complainant as a witness before Judge Dibell he was asked the question what effect the discharge of water from the railroad had on the complainant's land. The question was objected to, and the court inquired if there was anything about that in the bill. Counsel for the complainant stated that there was not; that he was going to ask leave to amend; that he did not know of that condition when the bill was filed and there were two or three amendments which he wanted to make. Counsel for the railway company objected that the amendments ought to be submitted before proceeding further with the case. The court stated that counsel had a

right to amend the bill even after they got all the proof in. No motion for leave to amend was made. A stipulation of counsel, made after Judge Dibell's death, for submitting the cause to Judge Hill for decision, provided that it should be submitted upon the pleadings and the transcript of the evidence, with such arguments as counsel saw fit to present, and that no further evidence or proof should be heard or presented. Counsel for the complainant in the hearing before Judge Hill asked leave to file amendments to the bill of complaint, which were presented to the court, but the court denied the motion, and the appellant has assigned error on this action of the court. The original bill charged that the railway company had encroached on the street and occupied it with various structures which have been mentioned; that the ordinance vacating a portion of the street authorized the continuance of such structures and the occupation of the street by them, and by narrowing the street in this way appellant's property was injured and depreciated in value. No other cause of action was suggested in the bill. No complaint was made of the manner in which the structures were maintained or conducted, no damage to the appellant's property from such cause was alleged, and no relief was asked except for the occupation of the street and the vacation of it for the purpose of such occupation. The amendments alleged improper maintenance of the toilets, the chicken house, and the operation of the coal-chute in connection with the elevation of coal and the dropping of it into the chute with loud, grating noises, creating large volumes of coal dust and other dust, which rise up in the air and when the wind is blowing from the east are carried over and on the lots of the complainant. The amendments made a complete change in complainant's cause of action. The original cause of action was based upon the occupation of the street and had nothing to do with the manner in which the obstructions were maintained. However inoffensive they might be, they were still obstructions of the street,.

and for that reason, alone, were complained of in the bill. So far as the amendments are concerned, this cause of action is abandoned and appellant seeks relief because of the improper manner in which the structures complained of are used. No matter how good may be the right of the railway company to maintain them in the street, the amendments complain of the manner in which they are conducted. The operation of the coal-chute in such a manner as to be a nuisance to the property of the complainant, if it is actionable at all, is just as much so if located entirely on the right of way as if located in the street. In fact, it is located entirely on the right of way, and the only obstructions at that end of the street which are in the street are the coal-storage track and the embankment. The evidence which would support the original bill would not support the amendments, and the evidence which would support the amendments would not support the original bill.

The appellant introduced some evidence which tended to support the proposed amendments. It was not competent under the issues and the railway company objected. While it was admitted, the railway company was not required to introduce evidence to contradict that which was immaterial because not within the issues made by the pleadings. When the amendments were proposed to be made the evidence had been closed and it was agreed that no further evidence should be presented. The amendments raised entirely new issues of fact and questions of law, to meet which the defendants would be entitled to offer additional evidence. The allowance of an amendment to a bill after the issue has been formed is a matter largely within the discretion of the court, and new matter changing the character of the bill and making substantially a new case cannot generally be introduced after the cause is set down for hearing. A reviewing court will not reverse for a refusal to allow such an amendment unless a manifest abuse of discretion

is shown. (*Walker* v. *Struthers*, 273 Ill. 387; *Foss* v. *People's Gas Light and Coke Co.* 241 id. 238.) The court did not err in refusing leave to file the amendments.

The plat of McDougal's subdivision shows the original right of way line of the railway company 33 feet west of the track. It shows the 17-foot strip, the west line of which is marked "right of way line." It then shows a 50-foot street extending south the full length of the 17-foot strip. The cross-bill relied upon this plat as a statutory dedication of the west seven feet of the street which was not included in Front street as laid out. There is a dispute in the evidence as to where the fence on the west side of Front street was built,—whether west of this seven feet or not; but whether the seven feet was fenced out as part of the street or not, the evidence does not show that it was ever accepted by the village as part of the street. At the foot of the plat is written, "Accepted and approved by the village board of the village of Manhattan this 21st day of March, A. D. 1912.—Henry Eberhardt, President; Attest, Eugene Hoerrmann, Clerk." The act of approval by a village board, however, when the statutes and ordinances have been complied with in making a plat of a subdivision, is ministerial and may be enforced by *mandamus*. (*People* v. *Massieon*, 279 Ill. 312.) Such approval is evidence that the plat complies with the statutes and ordinances but is not an acceptance of the streets. (Ibid.) There is no evidence of any work done by the village on this seven-foot strip, or of any other act indicating an acceptance of it as a part of the street by the village. The cross-bill was therefore properly dismissed.

The decree will be affirmed.

*Decree affirmed.*