(No. 21968.—

May L. Clokey, Plaintiff in Error, *vs.* The Wabash Railway Company *et al.* Defendants in Error.

*Opinion filed October 21, 1933.*

C. C. MARTIN, and F. R. WILEY, for plaintiff in error.

CHARLES C. LEFORGEE, THOMAS W. SAMUELS, and CHARLES Y. MILLER, (N. S. BROWN, and HERBERT HAASE, of counsel,) for defendants in error.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The plaintiff in error, May L. Clokey, (hereinafter referred to as the complainant,) filed her amended bill in the circuit court of Macon county against the Wabash Railway Company and the Illinois Power and Light Corporation, defendants in error, (hereinafter referred to as the defendants,) alleging, amongst other things, that she was the owner in fee simple of lots 113 to 136, inclusive, in Wabash place, according to a plat recorded in book 149, at page 502, of the records of Macon county, Illinois; that the defendant the Wabash Railway Company was erecting a fence, contrary to law and without authority, along

the section line, which is the center of the street commonly known as East Herkimer street; that the railroad company had erected a gate at the west end of the street and closed the south half of the street or road to the complainant and the general public by means of the gate and fence; that the fence constitutes a nuisance to the complainant and all other owners of lots in Geddes suburb (Wabash place) and to the general public; that the defendant the Illinois Power and Light Corporation has erected and is maintaining poles and wires in or near the center of the aforesaid public road and street contrary to law and without authority, and that the poles and wires are a nuisance to the complainant and all other lot owners in Geddes suburb (Wabash place) and to the general public; that the nuisances are causing the complainant and other lot owners irreparable injury and should be abated; that the complainant has asked the defendants to remove such obstructions; that the defendants have severally refused, and she prays for an injunction against the defendants restraining and enjoining each of them from maintaining such gate, poles, wires and power line on the strip of land designated as East Herkimer street or East Grand avenue, and from further closing the alleged public road with fences, poles, wires and other obstructions.

An answer was filed by the defendants to the amended bill. The answer in substance denied the averments of the bill; denied that the strip of land designated as East Herkimer street was a street; set up a conveyance by Josiah Clokey, as executor, to the Wabash Railroad Company, predecessor of the Wabash Railway Company, by deed of December 26, 1904, of certain premises, including the strip in dispute, being the twenty-foot strip south of the center section line and being the south twenty feet of the alleged tract or street designated as Herkimer street; that the railroad company took possession of said property, and from thence hitherto it and its successor, the

Wabash Railway Company, has been in the open, notorious, visible, continuous, adverse, uninterrupted and exclusive possession of the same and during all that time has paid the taxes on the land. A decree was entered dismissing the amended bill for want of equity. The writ of error in this cause is sued out to review the action of the trial court.

The land in dispute is a strip of land twenty feet wide off the north end of the northwest quarter of the southeast quarter of section 12. It appears that one James Geddes was originally the owner of the two forty-acre tracts. He died testate on or about the 24th day of January, 1895. His will was admitted to probate in the probate court of Macon county on the 29th day of January, 1895, and letters testamentary were issued to Josiah M. Clokey as the sole executor of the will. By the third clause of his will the executor was authorized and empowered to sell all the real estate of the deceased testator except some city lots which are not involved in this proceeding. The will conferred on the executor the right to sell the real estate at public or private sale, at such time or times and upon such term or terms and in such manner as to the executor might seem proper, but none of the real estate should be sold by the executor until three years after the expiration of the date of the death of the testator. The executor was further authorized, in his discretion, to subdivide the real estate, or any part thereof, into such parts, pieces or parcels as he may deem best, with full power to have executed and recorded a plat or plats of such subdivision. On or about the first day of April, 1903, Clokey caused a survey and plat to be made by G. V. Loring, the then county surveyor of Macon county, of the south portion of the southwest quarter of the northeast quarter of section 12, which subdivision was designated "Geddes suburb." The plat, with the certificate of the county surveyor, was filed in the office of the recorder of Macon

354

county on the 11th day of April, 1903. The plat as recorded therein and the certificate of the county surveyor are as follows:

GEDDES SUBURB

*"April 1st, 1903.*
"I hereby certify that I have surveyed for J. M. Clokey, executor of the last will and testament of James Geddes, deceased, the south part of the southwest quarter of the northeast quarter of section twelve (12), in township sixteen (16), north, and range two (2) east of the third principal meridian, in Macon county, Illinois, and have subdivided the same into five lots as shown in the above plat.
G. V. LORING, *County Surveyor."*

Subsequently lots 2 and 3 were conveyed by Clokey to Alice Phillips on the 19th day of March, 1904. She in turn conveyed lot 2 on January 28, 1905, to Warren T. Durfee, and on the date last named also conveyed lot 3 to W. Frank Godwin. On March 7, 1906, Clokey, as such executor, conveyed lots 4 and 5 to Godwin and Durfee. On May 2, 1905, Loring, who was still the county surveyor of Macon county, made a survey and plat of lots 2, 3, 4 and 5 of Geddes suburb, which plat was filed for record in the recorder's office on the 9th day of June, 1905. This re-survey and certificate were designated as Wabash place. The plat is as follows:

Center of Section

7th STREET 6o ft.

EAST HERKIMER

EAST LOCUST

ALLEY

EAST HICKORY ST. 4o ft.

WIDE ALLEY

GEDDES

40' 8th STREET 4o ft.

LOCUST STREET 4o ft.

STREET 4o ft.

LOT NO. 145

LOT NO. 1
GEDDES SUBURBS

WABASH PLACE

AVENUE 6o ft.

484'

151

15.4 9th STREET 15½ ft. 15.2

"DECATUR, ILLINOIS, May 2, 1905.
"I hereby certify that I have surveyed for W. Frank Godwin, Warren T. Durfee, the following described land, viz.:
"Beginning at the southwest corner of the northeast quarter of section twelve (12) town sixteen (16) north, range two (2) east of the third (3rd) P. M., in the county of Macon and State of Illinois; thence north on the quarter section

line ten hundred five and ½ (1005½) feet; thence easterly six hundred seventy-five (675) feet; thence south four hundred eighty-four (484) feet to a point five hundred twenty-one and 25/100 (521.25) feet north of the east and west quarter section line; thence easterly six hundred seventy-five and 2/10 (675.2) feet to the east line of the west half of said north-east quarter section; thence south on said line five hundred twenty-one and 1/10 (521.1) feet to the east and west quarter section line; thence west on said quarter section line thirteen hundred fifty and 4/10 (1350.4) feet to the place of beginning, and have subdivided the same into lots, streets and alleys as shown on the above plat.

G. V. LORING, *Surveyor of Macon Co., Illinois.*"

The certificate does not describe any land in the north-west quarter of the southeast quarter of section 12.

In the purported deed of dedication accompanying the plat last named, Durfee and Godwin described the property so subdivided by the same description as herein last above set forth. None of this property at the time it was platted and surveyed was located in the city of Decatur but was located in the town of Decatur, and is situated about two or three miles east of the business center of the city of Decatur.

The shops of the then Wabash Railroad Company (now the Wabash Railway Company) were in 1904, and for many years prior thereto, located at Decatur. In 1904, and for several years immediately preceding, a movement was on foot to move the shops from Decatur to Bement, and the railroad company had gone to the extent of purchasing land in the neighborhood of Bement for the purpose of establishing its shops at that point. A great many of the public-spirited citizens, including Josiah M. Clokey, and the Chamber of Commerce of Decatur, were very active in the movement to induce the Wabash Railroad Company not to remove the shops from Decatur but to retain them there. This movement originated as early as 1899. The record showed two letters written by Clokey to the vice-president and general manager of the Wabash Railroad Company urging that the company retain its shops at Decatur; that the agitation with reference to the shops being moved to Bement was doing great injury to the city and the community and was preventing persons from investing in real estate on account of the possible decrease

in values which might be occasioned by the removal of the shops from the city. In 1903, or in the early part of 1904, a ninety-day written option was given by Clokey, as executor, to the Chamber of Commerce of the city of Decatur to purchase seventy acres of land belonging to the Geddes estate for the sum of two hundred dollars per acre for the purpose of locating the Wabash railroad shops thereon. This land included, with other lands, the strip of land in controversy. Subsequently, on the 26th day of December, 1904, Clokey, by his executor's deed of that date, conveyed to the Wabash Railroad Company, for the consideration of $14,000, the seventy acres of land owned by the Geddes estate. The deed was acknowledged on that same day. This deed was filed for record on March 29, 1906, in the recorder's office of Macon county. The warranty contained in the deed was unlimited, except for an existing coal lease. While we cannot definitely determine from the evidence how much of the northwest quarter of the southeast quarter of section 12 was conveyed, yet the deed undoubtedly conveyed at least the north half of the forty-acre tract last named. The evidence established that immediately upon the conveyance of the seventy-acre tract to the Wabash Railroad Company it took possession of the premises purported to be conveyed and has ever since been in the open, adverse, notorious, hostile, uninterrupted, continuous and exclusive possession thereof and during all that time has paid the taxes levied against the property described in the deed.

The evidence proved that at the time the Wabash Railroad Company purchased said lands the lands were used for agricultural purposes and were not in a thickly settled community. That there was then located on the east and west center section line of section 12, which is the north boundary line of the property purported to be conveyed to the Wabash Railroad Company and which is the dividing line between the southwest quarter of the northeast quarter

and the northwest quarter of the southeast quarter of section 12, and had been for many years theretofore, a hedge fence. This hedge fence, together with a rail fence, (sometimes called a brush fence in the record,) had been located on this division line as early as 1903 and prior thereto. The railroad company in 1905 or 1906 removed this fence and constructed a board fence, about seven or eight feet high, for the full length of the center line between the two forty-acre tracts hereinabove mentioned. In 1927 this board fence was blown down by a tempest. In 1928 the railroad company built a heavy wire-mesh fence upon this same line at a cost of something over $2700, and that fence was still upon the line at the time of the trial of the case in the court below.

On the plat of Wabash place a street is designated as Seventh street. This is also known in the record as Geddes lane and was sometimes called Twenty-second street. The evidence showed that to the east of Seventh street there was a ditch, and that the railroad company put in a concrete tile or culvert at the center of section 12 so that the employees could drive into the railroad property at the northwest corner thereof. A gate was also built, which opens to the west and onto Seventh street. This gate is immediately east of the culvert. The north end of the gate is on the east and west section line. The strip in dispute was used by the employees of the railroad company in going to and from their work at the shops and by other persons who had business with the company.

On the trial of the case the complainant offered in evidence what purported to be the original survey and plat of Geddes suburb. There is a variance between this document and the record of the plat and survey. The purported original plat shows along the south line of lots 4 and 5 and between the dotted line and heavy line indicating the east and west center section line, the figures and letters "675 ft," and south of the same center section line the words "Public

Road." The evidence disclosed that Loring, the county surveyor, had died prior to the trial. The county recorder testified that at the time the plat was filed for record she was a deputy county recorder and had been for several years; that at the time of the recording of the Geddes suburb plat it was the custom of the office to compare the original instrument filed with the record before the original left the office.

So far as the record discloses, no complaint was made by Clokey with reference to the alleged public road designated as East Herkimer street not being open or that the same was enclosed by the Wabash Railroad Company, until in 1922. In his correspondence with the local superintendent of the railroad company, Clokey sent a purported abstract of title, not certified, together with a plat of Geddes suburb. This plat is identical with the plat as recorded. The words "Public Road" and figures and letters "675 ft" do not appear on the south line of the plat of Geddes suburb. In December, 1922, Clokey wrote a letter to the then attorney for the town of Decatur claiming that there was a road designated as Herkimer street along the south side of the southwest quarter of the northeast quarter, and complained that the Wabash had enclosed this alleged thoroughfare and should be required to move its fence. He also had correspondence with the local attorneys for the Wabash at Decatur with reference to this same strip of ground now in controversy, and also with the local superintendent of the Wabash. On the second day of December, 1922, Clokey was advised by letter from the local attorneys of the railroad company that they had given their opinion to the railroad company that the fence in question should not be removed.

Josiah M. Clokey died about 1923. The complainant acquired her title to the real estate owned by her by virtue of a quit-claim deed from Ira W. Clokey and his wife, bearing date of February 27, 1924, in and by which the

grantors conveyed to her all of their interest in said real estate. The deed recites that it was made by the heirs of Josiah M. Clokey, deceased, for the purpose of partitioning his estate. Nothing further was done with reference to the opening to the public as a street of the strip in question until December 28, 1928. On that day the complainant gave notice to the defendant railroad company to vacate the alleged street. The fence in question had been fully constructed at the time of the giving of the notice to remove. The evidence showed that the defendant the Illinois Power and Light Corporation had constructed a power line, consisting of poles and wires, on the strip in dispute enclosed by the Wabash Railroad Company, with the consent of the railroad company, for the purpose of transporting power and light to the railroad shops. No notice was ever given it, prior to the filing of the bill, to remove its poles and wires.

It is contended by the defendants that the bill in this case will not lie and that the complainant has an adequate remedy at law. This contention is without merit.

The question chiefly urged by counsel for the respective parties is, Was there or was there not a dedication of the strip of land in dispute by the plat and survey of Geddes suburb evidenced by the making and recording of the plat of Geddes suburb? It is contended by the complainant that the plat of Geddes suburb was a complete dedication of the tract in question and that the plat is good as a statutory plat. There is a marked distinction between the legal effect of property purported to be dedicated by statutory plat and that purported to be dedicated by common law plat. By a statutory plat the fee to the premises purported to be conveyed is vested in the municipality having control over the way alleged to be dedicated, subject to acceptance by such authority, while under a common law plat the fee of the tract purported to be conveyed remains in the dedicator, burdened only with the easement over

the way in question and subject to the acceptance of such easement by the municipality to whom the dedication is purported to be made, or which, as a matter of law, has control over the ground dedicated. Under a common law plat the grantor may, at any time prior to acceptance of the grant, revoke the dedication. The statute of this State with reference to plats provides, amongst other things, that the plat shall particularly describe all the streets, alleys, common or public grounds, giving the names, width, course and extent of all such streets and alleys and numbers of lots and blocks by progressive numbers, giving their precise length and width. The statute further provides that reference must also be made to some known and permanent monument from which further surveys may be made, or, if no such monument shall exist within convenient distance, the surveyor shall at the time of making his survey plant and fix, in such manner that the same shall not be removed by frost, at the corner of some public ground, or if there be none, then at the corner of some lot or block most convenient for reference, a good and sufficient stone, and designate upon the plat the point where such stone may be found. (Smith's Stat. 1933, chap. 109, sec. 1.) The plat of Geddes suburb was not a compliance with this statute, and the plat and survey were not sufficient as a statutory dedication of the public grounds purported to be dedicated thereby. *Needham* v. *Village of Winthrop Harbor,* 331 Ill. 523; *Nimpfer* v. *Village of Fox Lake,* 334 id. 46; *City of Chicago* v. *Drexel,* 141 id. 89.

There is a very grave question raised by this record as to whether or not the original plat made any reference to a public road purported to be located along the south side of Geddes suburb and the north side of the northwest quarter of the southeast quarter of section 12. It is significant that the plat as recorded makes no reference to a public road. This fact, taken in conjunction with the county surveyor's certificate making the survey, by which

he certified that he had surveyed "the south part of the southwest quarter of the northeast quarter of section 12" and had subdivided the same into five lots as shown on the plat, raises a serious issue as to whether there was any dedication of the alleged road made or attempted. All parties agree that prior to this survey, made in 1903, there was no public road or street on the east and west center section line of section 12. The survey, as certified to by the surveyor, is limited to the southwest quarter of the northeast quarter of section 12. The tract in dispute is not located in that tract but is located in the northwest quarter of the southeast quarter of section 12. It is reasonable to believe that if the surveyor had actually surveyed any portion of the last named forty-acre tract he would have so stated in his certificate of survey. This fact is further accentuated because of the evidence produced by the defendants that in 1912 or 1913 the same surveyor who made the survey and plat of Geddes suburb was employed to make a plat or map of all the roads in Decatur township. The plat was prepared by Loring and a certified copy thereof was offered in evidence. This plat does not show any road or public highway running to the east of Geddes lane and does not show the alleged Herkimer street road.

Counsel for the defendants contend that the plat controls over the surveyor's certificate, and in support of their position rely upon *Ely* v. *Brown*, 183 Ill. 575. That case we do not deem to be out of harmony with what we have said with reference to the particular plat and survey of Geddes suburb. In the *Ely case* there was no conflict between the plat and the surveyor's certificate but the repugnance was between two different plats. That case held, also, that where the original monuments were lost or could not be located reference might be had to the recorded plat, and that where there is a conflict between two plats, the grantee, where he derived title from the dedicator of the

two plats, might elect to take the plat that is most favorable to him. Such is not the situation in the case at bar. Here the surveyor certified to the land actually surveyed by him and fixed and determined its location. The proprietor and dedicator did the same. However, we do not deem it necessary to the decision of this case to determine whether or not the original plat of Geddes survey was correctly recorded.

There is no contention that prior to the making of the deed under date of December 26, 1904, to the Wabash Railroad Company, such company had notice of the discrepancies between the plat as recorded and the original plat, or, in other words, that the original plat showed a public road of the width of forty feet, the center line of which was the east and west center line of section 12. The railroad company had the right to rely upon the record of the plat. It was not the duty of the company to locate the original plat, examine it and see whether or not it corresponded with the plat as recorded. To hold so would nullify the effect of our recording laws and would lead to endless confusion in the business world. Our recording laws are for the purpose of affording protection to parties who act in good faith and rely upon them, and also for the purpose of expediting transfers of real estate and other property. A party has a right to rely upon the records as he finds them, and if, in the absence of any specific notice to him of any fraud or mistake in the recording of an instrument or notice of facts sufficient to put him on his inquiry, he purchases property relying upon the record, he will be protected. *Lennartz* v. *Quilty*, 191 Ill. 174.

If we assume that the plat and survey in question of Geddes suburb, together with the deed of dedication attached thereto, were a sufficient dedication of the way in question as a public road, can the complainant then recover? She did not acquire her title to the lots facing on so-called

Herkimer street until the year 1924. She was not a purchaser of her property, but her title came by virtue of the statute as the surviving widow of Josiah M. Clokey, deceased, who is the same person who as executor made the warranty deed to the Wabash Railroad Company (predecessor of the defendant Wabash Railway Company) of the premises in controversy. The deed to her was made by his son, who describes himself in the deed as the "sole heir" (and his wife) of Josiah M. Clokey, deceased, and purported to convey "all interest" of the grantors in the premises described in the deed, and recites it is made in the partition of the estate of her deceased husband. Clokey, as executor, made a warranty deed to the property involved to the Wabash Railroad Company. Godwin and Durfee acquired their title to Wabash place through Clokey as executor. Clokey could not, therefore, as against the railroad company, claim the strip was a road. If Clokey is estopped. from claiming the tract in dispute is a road by reason of the alleged dedication of Geddes suburb his widow likewise would be estopped. She did not acquire her title to her lots in Wabash place until long after the conveyance by her husband to the railroad company, and cannot claim any benefit of the supposed dedication of Herkimer street made by the plat and dedication of Wabash place.

The making and recording of the plat of Geddes suburb being only good as a common law plat, amounted only to the making of an offer, which was not completed until accepted by the municipal authority having control over the purported highway. The making of such plat and the selling of lots with reference thereto were only evidence of an intent to dedicate the highway in question. Like every other dedication, in order to complete the same and carry it into effect so as to create public rights therein the same must be accepted and acted upon by the public. The plat had no effect as a conveyance, and the offer to dedicate created thereby might be revoked by the owner or

grantor at any time before acceptance by the public. The acceptance may be established by some open or formal act of the public or public authority in charge of the way sought to be dedicated, by repairing, improving or construction of facilities for the use of the public or by otherwise assuming control over the same, or by its use by the public for the express purpose for which the road was dedicated. (*Nimpfer* v. *Village of Fox Lake, supra;* Elliott on Roads and Streets, sec. 154; *Woodburn* v. *Town of Sterling,* 184 Ill. 208; *Rees* v. *City of Chicago,* 38 id. 322; *Smith* v. *Town of Flora,* 64 id. 93; *Wragg* v. *Penn Township,* 94 id. 11; *Fairbury Agricultural Board* v. *Holly,* 169 id. 9; *Town of Lake View* v. *LeBahn,* 120 id. 92.) A municipal corporation cannot, by the mere making and recording of a plat by a property owner, be required to accept the public places dedicated to it thereby. The dedicator cannot in that way impose upon the public authorities the burden of caring for the streets and alleys included in the subdivision of a property, nor can the municipality be required to open and improve such streets or be held liable for damages occasioned by reason of their unsafe condition until it has actually accepted such streets. (*Littler* v. *City of Lincoln,* 106 Ill. 353; *Hamilton* v. *Chicago, Burlington and Quincy Railroad Co.* 124 id. 235; *Nimpfer* v. *Village of Fox Lake, supra.*) The public authorities have a right to determine whether or not they will accept a tract purported to be dedicated as a road for a public highway as a charge upon the municipality for the maintenance thereof, and until they have so accepted the public way the road or street does not become a public thoroughfare. Pending the acceptance of the way purported to be dedicated, the grantor may revoke the dedication at any time before it is accepted by the public. The evidence in this case shows that the town of Decatur did not, through any of its duly constituted officers, ever accept the alleged public road. No work was ever done upon it, no money

expended for its improvement, and no attempt was ever made by the highway commissioner of the town of Decatur to open up the alleged road. No act in any way tending to prove an acceptance of Herkimer street as a public road or street by the public authorities was shown. Such an acceptance must be established by clear and unequivocal proof. (*City of Chicago* v. *Drexel, supra; Birge* v. *City of Centralia,* 218 Ill. 503; *Rose* v. *Village of Elizabethtown,* 275 id. 167.) The revocation of an offer to dedicate may be shown by acts inconsistent with the public use or for which the land is offered to be dedicated. Such revocation may be established by showing a conveyance of the property, by the enclosing of the land so as to exclude the public therefrom, or by the erecting of buildings on the land offered to be dedicated as a street or road. *Nimpfer* v. *Village of Fox Lake, supra.*

It is, however, contended by the complainant, that because of the acceptance by the public of other streets and roads shown on the plat of Geddes suburb there was an acceptance of all streets so shown. Such is not the law in this State. A municipality may accept a part of the streets shown upon a plat and reject a part of the streets, or as to a particular street it may accept a part and reject the remainder of the same street. *Hoerrmann* v. *Wabash Railway Co.* 309 Ill. 524; *Russell* v. *Chicago and Milwaukee Electric Railway Co.* 205 id. 155; *People* v. *Massieon,* 279 id. 312; *Jordan* v. *City of Chenoa,* 166 id. 530.

It is claimed by the complainant that even though the plat of Geddes suburb was not sufficient as a statutory plat, and even though there was no sufficient dedication of the way referred to as Herkimer street in the record of this same plat, yet the plat of Wabash place is good as a statutory plat and that there was a complete dedication of Herkimer street by that plat; that the deed to the Wabash Railroad Company was not filed for record until March 26, 1906, about nine months after the recording of the plat of

Wabash place, and that the company therefore had constructive notice by virtue of the plat of Wabash place. This position is not sound for two reasons: First, the proprietors of Wabash place owned the fee to no land south of the east and west center line of section 12. They could dedicate what they saw fit to the public for roads and streets in that portion of the southwest quarter of the northeast quarter of section 12, but they could not legally dedicate for a road or street any portion of the land in the northwest quarter of the southeast quarter of section 12. Second, the title to the lands conveyed to the railroad company passed with the delivery of the deed to it and not by the filing of the same for record.

There is very little evidence in the record as to when the deed was delivered to the Wabash Railroad Company. No evidence was offered on the part of the complainant as to when such deed was delivered. One witness for the defendants testified that the deed was received by the company about the time the deed bore date, but on cross-examination he admitted that he did not know just when the deed was received by the company, but he did know that the company had the deed in its possession for a considerable length of time prior to its being filed for record. In the absence of proof to the contrary the presumption of law is that a deed is delivered on the day of its date. (*Jayne* v. *Gregg,* 42 Ill. 413; *Hardin* v. *Osborne,* 60 id. 93; *Smiley* v. *Fries,* 104 id. 416; *Bennett* v. *Millard,* 142 Ill. App. 282; *Lake Erie and Western Railroad Co.* v. *Whitham,* 155 Ill. 514; *Redmond* v. *Cass,* 226 id. 120.) Under the authorities this case must be considered upon the basis that the deed to the Wabash Railroad Company was delivered on the 26th of December, 1904. That was about six months before the recording of the plat, certificate of survey and deed of dedication of Wabash place. There never having been an acceptance prior to the making of the deed by Clokey, as executor, on December 26, 1904,

to the railroad company, on the part of the public, of the alleged public road in question when Clokey, as such executor, made his deed to the Wabash Railroad Company, he thereby revoked his offer to dedicate the strip in controversy as a public road. *Hamilton* v. *Chicago, Burlington and Quincy Railroad Co. supra; Jordan* v. *City of Chenoa, supra; Hewes* v. *Village of Crete,* 175 Ill. 348; *Russell* v. *Chicago and Milwaukee Electric Railroad Co. supra.*

The deed made by Clokey, as executor, to the Wabash Railroad Company did not except the street in question. While, under the decisions of this court, the existence of a public road across land conveyed does not generally constitute a breach of warranty, yet the description of the property conveyed by Clokey to the Wabash Railroad Company was by metes and bounds. The description followed the east and west center section line, and nothing was said about said line being the center of any road or street. Under the peculiar circumstances of this record we can legitimately infer that at that time, Clokey, as such executor, intended to convey just what his deed called for, and that he did not then contemplate that such center section line was the center of any public road or street.

Another point most urgently insisted upon and argued in the briefs in this case is the question whether or not the Statute of Limitations, and also the principle of equitable estoppel, apply in the case at bar. From what we have heretofore said it would not be necessary to decide that point, but inasmuch as counsel for both sides have raised that point and urge that it is very important to the decision of the case, we have given it due and earnest consideration.

The evidence shows that immediately upon the making and delivery of the deed on December 26, 1904, to the Wabash Railroad Company for the way in question, with other lands, the railroad company entered into possession

of the premises conveyed to it by the deed. The railroad company has paid the taxes upon this property ever since it purchased it. There has never been any public use of the property within the meaning of that term as applied to the acquiring of a road by prescription. The use, if any, by the public during the time that the fence was blown down was purely permissible. In order to establish a highway by prescription the use by the public must be adverse, open, notorious, exclusive, continuous and uninterrupted. Mere travel by the public of a way does not, of itself, constitute adverse use of the property by the public. None of the lot owners ever made any attempt, prior to the filing of the bill in this case, to cause the way in question to be opened. No public official ever made any attempt to have the way in question opened. While, strictly speaking, the Statute of Limitations does not run against the municipal authorities where public rights are involved, yet the doctrine of equitable estoppel, or non-user, may be invoked both against the public authorities and private individuals. The public authorities have constantly refused. at all times to accept the way in dispute or to assume any control over it or to expend any money by way of any improvement or up-keep. The law does not impose any duty of that kind on them. The adjoining property owners have had full knowledge during all this time that the public authorities refused to accept the supposed street, that the title to the alleged street was claimed by an individual owner, and such lot owners must be deemed to have acquiesced in the refusal of the authorities of the town of Decatur to accept the alleged road as a highway.

The only property right which the owner has in a street, as distinguished from the public rights, is the right of access. No such right is here affected, because the alleged road was fenced in before the laying out of Geddes suburb, and, notwithstanding the different changes in ownership, the enclosure has ever since continued. If there ever was

any right of access to private individuals by means of the strip twenty feet in width off the north end of the northwest quarter of the southeast quarter, that right has been abandoned and cannot now be revived or asserted on the part of private individuals. The rule is that the mere nonuser of a way for the ordinary statutory period of limitations by the public or authorities charged by the law with the care of a public road or street, creates the presumption, though not a strong one, that the easement has been abandoned or extinguished, where there is no other proof of the non-use of the way, but if such non-user is supplemented by proof that the owner of the premises charged with the easement has done things inconsistent with and antagonistic to the existence of such easement the extinguishment thereof is presumed. The private individuals, as well as the public authorities, have therefore lost their right, if they ever had any, to the lands in question, under the doctrine of estoppel *in pais*. *Village of Itasca* v. *Schroeder*, 182 Ill. 192; *Hewes* v. *Village of Crete, supra; Village of Vermont* v. *Miller*, 161 Ill. 210; *Pullman Car Corp.* v. *Stroh*, 349 id. 492; *City of Peoria* v. *Johnston*, 56 id. 45; *Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet*, 79 id. 25; *City of Decatur* v. *Niedermeyer*, 168 id. 68; *City of Joliet* v. *Werner*, 166 id. 34; *Lee* v. *Town of Mound Station*, 118 id. 304.

It is also urged by the complainant that the trial court improperly allowed fees to the master in chancery by reason of such master's fees not being itemized. It is the law that the fees of the master in chancery should be itemized, and if found proper by the court it shall fix such allowance; also, that an allowance of the master in chancery's fees should not be made in gross. (*Keuper* v. *Mette*, 239 Ill. 586; *Wirzbicky* v. *Dranicki*, 235 id. 106; *Fitchburg Steam Engine Co.* v. *Potter*, 211 id. 138.) The abstract of record fails to show any order of the court allowing the fees of the master in chancery. However, the master's

report as abstracted shows that his fees were $378.20, of which amount the complainant's solicitors paid $182.75 and the defendants' solicitors $195.35. The record is barren of any objection to the amount of the master's fees or his apportionment thereof between the parties. The complainant having voluntarily paid the master in chancery's fees without any protest is not in a position here now to urge, as a ground of reversal of the decree of the circuit court, that the fees of the master in chancery were not properly itemized.

The decree of the circuit court is affirmed.

*Decree affirmed.*